**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEVIN SROGA, | Civil Action No. 16-CV-05796 |
|         Plaintiff, | Honorable Judge Harry D. Leinenweber |
|     v. | <u>**JURY TRIAL DEMANDED**</u> |
| JENNIFER HONDZINSKI, RAYMOUND SOUCHET, LEROY KAMINSKI, SONIA MORIARTY, DONNA TARALA, EDWIN PAGAN, TRACEY SROKA, JOHN NOWIK, EDWIN ROMAN, CESAR ECHEVERRIA, JULIE BUTZEN, NODAL ROSARIO, ROBIN GONZALES, JAMES POREMBA, DAVID DEJA, JOHN & JANE DOE, THE CITY OF CHICAGO | |
|     Defendants | |

<u>**AMENDED COMPLAINT**</u>

Plaintiff Kevin Sroga ("Sroga"), for his Amended Complaint avers as follows:

<u>**THE PARTIES**</u>

1.    Plaintiff Sroga is and was at all times relevant to the allegations in this Complaint, a resident of Chicago, Illinois.

2.    Defendant Jennifer Hondzinski, Star No. 3774 ("Hondzinski"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

3.    Defendant Raymound Souchet, Star No. 139 ("Souchet"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Streets and Sanitation Department.

4.     Defendant Leroy Kaminski, Star No. 430 ("Kaminski"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Streets and Sanitation Department.

5.     Defendant Donna Tarala, Star No. 19323 ("Tarala"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

6.     Defendant Edwin Pagan, Star No. 4338 ("Pagan"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

7.     Defendant Tracey Sroka, Star No. 16934 ("Sroka"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

8.     Defendant John Nowik, Star No. 11210 ("Nowik"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

9.     Defendant Edwin Roman, Star No. 15673 ("Roman"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

10.     Defendant Cesar Echeverria, Star No. 14374 ("Echeverria"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

11.     Defendant Julie Butzen, Star No. 8582 ("Butzen"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

12.     Defendant Nodal Rosario, Star No. 8771 ("Rosario"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

13.     Defendant Robin Gonzales, Star No. 1317 ("Gonzales"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

14.     Defendant James Poremba, Star No. 2227 or 2277 ("Poremba"), was, at all times relevant to the allegations in this Complaint, employed as a Sergeant by the City of Chicago Police Department.

15.     Defendant David Deja, Star No. 2051 ("Deja"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

16.     Defendant Sonia Moriarty, Star No. 11907 ("Moriarty"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

17.     Defendants John and Jane Doe are unidentified Chicago Police Officers or unknown employees of the City of Chicago and/or the Chicago Police Department who have not yet been identified by Plaintiff. At all times relevant to the allegations in this Complaint, John and Jane Doe were employed by the City of Chicago Police Department.

18.     Defendant the City of Chicago was, at all times relevant to the allegations in this Complaint, a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the City of Chicago maintained, managed, and/or operated the City of Chicago Police Department.

19.     At all times relevant to this Complaint, the Defendants, except for the City of Chicago, acted under color of law and within the scope of their respective employment with the Chicago Police Department or the Chicago Department of Streets and Sanitation.

20.     All Defendants, except for the City of Chicago, are sued in their individual capacity.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Sroga asserts claims under 42 U.S.C. § 1983 to redress the deprivation of his Fourth,

3

Eighth, and Fourteenth Amendments under the United States Constitution by state officials or employees acting under color of state law.

22.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because the events forming the basis of this Complaint occurred in this District.

## FACTUAL ALLEGATIONS

### Sroga's history with 14th District Police Officers

23.     Since approximately 2003, police officers assigned to his district have harassed and targeted Sroga. This harassment and targeting has included numerous citations, arrests, and orders to tow Sroga's vehicle that were done without probable cause and solely for the purpose of harassment.

24.      Police Officers in the 14th district, including Defendants Moriarty, Tarala, Pagan, Hondzinski, and Sroka have ordered the towing of Sroga's vehicles approximately 30 or more times. None of those tows were found to be justified.

25.     Of these approximately 30 previous tows ordered by Police Officers in the 14th District, approximately eight were Confidential Vehicle Identification Number ("VIN") checks. Upon information and belief, Defendants Hondzinski, Sroka, and Tarala know what vehicles belong to Sroga, and Defendants Moriarty, Tarala, Pagan, Hondzinski, and Sroka have agreed to target his vehicles for citation and towing in order to harass Sroga.

26.     Upon information and belief, CPD issues Confidential Vehicle Identification Number ("VIN Number") check in an attempt to verify that the vehicle subject to the check has 1) a VIN Number and 2) verify that essential parts are not stolen.

27.     Upon information and belief, when CPD lists a vehicle for a Confidential VIN check, it is towed and CPD personnel then search the vehicle to check and verify the VIN numbers.

4

28.     Upon information and belief, 14th district police officers, including police officer Defendants, use Confidential VIN checks as a means to have vehicles removed from the street, without having any probable cause to believe the vehicles are stolen or have stolen parts.

29.     Since on or about 2003, the police officers, including Defendant Hondzinski and Sroka have had a personal vendetta against Sroga, which has lead to numerous unfounded citations, arrests, and harassment.

**Interaction with Tow Operator and Department of Streets and Sanitation Employees**

30.     On June 18, 2014, Sroga's vehicle, a 1997 Ford Crown Victoria ("Sroga's vehicle") was lawfully parked on the street in the vicinity of 1240 N. Homan Avenue, Chicago, IL 60651.

31.     At approximately, 12:00 pm, Sroga arrived at his vehicle.

32.     When Sroga arrived at his vehicle, a flat bed tow truck bearing a placard reading "CITY OF CHICAGO DEPARTMENT OF STREETS AND SANITATION, POLICE TOWING," had pulled up in front of Sroga's vehicle.

33.     On information and belief, the tow truck was operated by subcontractors of E&R or United Road Towing, which operate auto pounds for the City and sub-contract out to tow truck operators to tow vehicles.

34.     On information and belief, E&R or United Road Towing give their sub-contractors placards or signs that read "CITY OF CHICAGO DEPARTMENT OF STREETS AND SANITATION, POLICE TOWING," indicating that the truck is an authorized and approved agent for the City of Chicago.

35.     Upon arriving, Sroga spoke with the tow operator, identifying himself as the owner of the vehicle. At that time, the tow operator indicated that that he had a Tow Report to tow Plaintiff's vehicle.

36.     Sroga requested the tow operator to contact his dispatch to inform them that the owner of the vehicle was on scene, and request they either cancel or override the tow.

37.     Upon information and belief, the tow was ordered by the Chicago Department of Streets and Sanitation based on a request by Defendants Hondzinski to conduct a confidential VIN check.

38.     Shortly thereafter, while Sroga was sitting in the driver's seat of his vehicle, with the key in the ignition, Defendants Souchet and Kaminski appeared on the scene in separate vehicles.

39.     Defendants Souchet and Kaminski were, at the time of this incident, both employees of the Chicago Department of Streets and Sanitation.

40.     Defendants Souchet and Kaminski were each driving vehicles bearing the markings of the Chicago Department of Streets and Sanitation.

41.     On information and belief, Souchet and Kaminski were both on duty when they arrived at the scene on June 18, 2014.

42.     On information and belief, Defendants Souchet and Kaminski drove to at the scene on June 18, 2014, in response to a call that the tow operator had placed to the Chicago Department of Streets and Sanitation response to Sroga's request to leave with his vehicle.

43.     On information and belief, Defendants Souchet and Kaminski arrived at the scene on June 18, 2014, to resolve the difference in opinion regarding the tow of Sroga's vehicle.

44.     On information and belief, the Chicago Department of Streets and Sanitation as part of its responsibilities as a public entity chartered under Chicago Mun. Code § 2-100-010, sends employees to sites of ordered tows when vehicle owners dispute the tow with the towing company sent by the Department to effect a tow.

6

45.     Streets and Sanitation Officers ("S&S Officers") have the authority to relocate and impound vehicles pursuant to the Chicago Municipal Code. *See* Chicago Mun. Code § 9-92-030.

46.     Under the Chicago Municipal Code, "no person shall operate a vehicle to tow another vehicle if the towed vehicle contains one or more passengers."  Chicago Mun. Code § 9-44-060.

47.     Under the Chicago Municipal Code, "The department of Streets and Sanitation is authorized to enter into contracts with private towing operators for the purpose of towing vehicles located on the public way." Chicago Mun. Code § 2-100-090.

48.     When the Department of Streets and Sanitation contract with a private towing operator, the private towing operator is in an agency relationship with the Department of Streets and Sanitation. *See* Chicago Mun. Code §9-92-050; *see also* Chicago Police Department General Order G07-03 ("Tows are provided by the Department of Streets and Sanitation (S&S) or its authorized towing agents twenty-four hours a day, seven days a week").

49.     On arriving at the scene, Defendants Souchet and Kaminski parked the Chicago Department of Streets and Sanitation vehicles they were driving alongside and slightly to the rear of Sroga's vehicle. The placement of these vehicles made it impossible for Sroga to drive his vehicle out of his parked space.  Defendants Souchet and Kaminski parked on the street side of Sroga's vehicle in a way that prevented Sroga from opening his driver-side door, or leave in his vehicle.

50.     While restricting Sroga's freedom of movement, Defendants Souchet and Kaminski told Sroga to get out of his vehicle. Sroga declined their requests.

51.     Sroga requested Defendants Souchet and Kaminski to cancel the tow and move their vehicles so that he could relocate his vehicle. Defendants Souchet and Kaminski did not comply with these requests.

52.     Defendants Souchet and Kaminski then instructed the tow operator to wrap his tow cable around Sroga's front bumper of his vehicle while Plaintiff was sitting inside of his vehicle with the key in the ignition. The tow operator proceeded to wrap his cable around the front of Sroga's vehicle.

53.     During the entire time that Sroga was at the site of his vehicle on June 18, 2014, Sroga's vehicle was never in the possession of the Chicago Department of Streets and Sanitation or the City of Chicago.

**Chicago Police Officers Interaction with Sroga**

54.     Defendants Moriarty and Tarala were the first Chicago Police Officers to arrive at the scene, arriving approximately ten minutes after Defendants Souchet and Kaminski had arrived.

55.     When the first police officers arrived, Defendants Souchet and Kaminski moved their Department of Streets and Sanitation vehicles. The squad cars of the Chicago Police Department then parked in the approximate location that the Chicago Department of Streets and Sanitation vehicles had been parked.

56.     Upon arriving at the scene, Defendant Tarala walked to Sroga's door and immediately attempted to open it. Defendant Tarala was unable to open the door because it was locked.

57.     Defendant Tarala then unlawfully ordered Sroga to get out of his vehicle.  Sroga declined and requested that Defendant Tarala call a Sergeant to come to the scene.

58.     While the Parties awaited a Sergeant, additional police officers arrived at the scene.  Defendant Pagan arrived at the scene and also tried to persuade Sroga to exit his vehicle. When the Sergeant arrived, he did not speak with Sroga about the circumstances, but rather unlawfully ordered him to get out of his vehicle. Sroga continued to stay in his vehicle.

59.     Thereafter Defendant Pagan sought to forcibly enter Sroga's vehicle.

60.     Defendant Pagan broke a rear passenger-side window of Sroga's vehicle.

61.     After breaking the rear passenger-side window, Pagan unlocked and opened the front passenger door and sat in the front passenger seat.

62.      During this unlawful forcible entrance, Defendant Pagan trained his tazer at Sroga and threatened that if Sroga moved, Defendant Pagan would taze him. Sroga remained in his seated position during the forcible entry.

63.     Defendant Pagan then reached over and opened the driver's side door and pushed Sroga out of the door.

64.     Once Sroga had been forced out of his vehicle, multiple officers descended upon him to take him to the ground. While the CPD officers were manhandling Sroga, one placed a boot forcibly on his head pushing his face into the pavement.  Throughout this incident, Sroga did not resist the officers.  Nonetheless, the officers kept shouting at Sroga to stop resisting. The CPD officers placed handcuffs on Sroga excessively tightly. As a direct result of the unnecessary and excessive force used to take Sroga to the ground, Sroga suffered torn tendons in both his right and left elbows.

65.     Defendant Pagan put Sroga into Defendant Hondzinski's squad car.  Defendant Hondzinski transported Sroga to the 14th District Police Department.  Sroga was kept there in a cinderblock holding room, restrained in handcuffs.

66.     While in the cinderblock holding room, Defendant Pagan slammed Sroga chest first into one of the walls and said "Welcome to our house now bitch!"

67.     As a result of such excessive, unwarranted use of force while he was in police custody within the 14th District, Sroga suffered injuries to his chest and arms. Due to Pagan's abuse and outrageous conduct, Sroga requested that Evidence Technicians ("ET") police officers take pictures of his bruised chest and wrists. The injuries to Sroga's arms continue to prevent him from gaining full employment.

68.     Sroga sustained and still continues to suffer from trauma, humiliation, fear, undue stress, mental anguish, lost wages, and the loss of employment as a result of his arrest and injuries.

69.     On information and belief, Sroga was arrested and detained for approximately four to six hours at the 14th District.

70.     After being detained at the 14th District, Sroga was transferred to the 19th District Police Station. After approximately two hours being detained in the 19th District Police Station, he was released, without ever having been told any explanation for his arrest.

71.     As he was leaving, Sroga was given a Personal Recognizance Bond ("I-bond"). From the I-bond, Sroga learned that he had been charged with violating 720 ILCS 5/21-2 Criminal Trespassing to Vehicles and 720 ILCS 5/31-1-A- Resisting/PC Off/Correction EMP/Fire Employees or Police Officer. (the "Charges").

**Adjudication of charges and subsequent injuries**

72.     The Charges were pending for 15 months within the Circuit Court of Cook County.  The Charges were never tried, and on November 16, 2015, the Judge dismissed the Charges because the State was not ready when the case was called.

73.     As a direct result of the unnecessary force used against Sroga during his arrest, Sroga suffered torn tendons and injuries to his wrist due to overly tightened handcuffs.

## FIRST CLAIM FOR RELIEF

**Violation of the Fourth Amendment for Illegal Seizure of both his person & Property
(Against Defendants Souchet and Kaminski)**

74.     Sroga repeats and realleges the allegations in paragraphs 1 through 73 above as set forth fully herein.

75.     Pursuant to the Fourth Amendment and 42 U.S.C. § 1983, Sroga has a right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

76.     Sroga did not act in violation of any laws by refusing to leave his vehicle on June 18, 2014.

77.     The Chicago Municipal Code forbids towing a vehicle while it has a driver or passengers inside.  "No person shall operate a vehicle to tow another vehicle if the towed vehicle contains one or more passengers."  Chicago Mun. Code § 9-44-060.

78.     Per General Order G07-03, when CPD Officers are "called to a scene to resolve a difference of opinion between a member of the public and a tow truck driver, Department members are to inform the complainant that once a vehicle is moved from the original location where the vehicle was parked, the tow will be completed."

79.     The import of Chicago city Ordinances and Chicago Police Department General Order G07-03, is that while S&S Officers, or their authorized agents, are not permitted to tow a

vehicle when it contains a passenger, they are allowed to stay on scene to resolve the difference in opinion.

80.     Defendants Souchet and Kaminski acted under the color of state law when they committed the acts alleged in the Amended Complain.

81.     Through their actions, Defendants Souchet and Kaminski proximately caused the deprivation of Sroga's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

82.     Defendants Souchet and Kaminski's deprivation of Sroga's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors caused Sroga to suffer substantial harm including, but not limited to, physical pain and suffering and both mental and emotional distress.

## SECOND CLAIM FOR RELIEF

**Violation of the Fourth Amendment for Illegal Seizure of both Sroga's Person & Property (Moriarty, Tarala, Pagan, Hondzinski, and Sroka)**

83.     Sroga repeats and realleges the allegations in paragraphs 1 through 73 above as set forth fully herein.

84.     Pursuant to the Fourth Amendment and 42 U.S.C. § 1983, Sroga has a right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

85.     Sroga did not act in violation of any City of Chicago, Illinois, or federal law or ordinance by occupying his vehicle or in refusing to acquiesce to the requests to exit his vehicle made by Defendants Souchet and Kaminski.

12

86.      Defendants Moriarty, Tarala, Pagan, Hondzinski, and Sroka had neither probable cause nor reasonable suspicion to believe that Sroga had committed or had attempted to commit a crime at the time Defendants Moriarty, Tarala, Pagan, Hondzinski and Sroka arrived at the scene and unlawfully ordered Sroga to exit his vehicle.

87.      Upon observing that the City of Chicago did not yet have lawful possession of Sroga's vehicle, Defendants Moriarty, Tarala, Pagan, Hondzinski, and Sroka should have known that no offense had been committed or was in the process of being committed.  Until Sroga's vehicle was being moved, Sroga had a legal right to sit in his vehicle.

88.      At no point—from their arrival on the scene to taking Sroga to jail—was there a reasonable basis or probable cause on which Defendants Moriarty, Tarala, Pagan, Hondzinski, and Sroka could have believed that Sroga had committed any crime, especially in light of the fact that the vehicle was not in the lawful possession of the City of Chicago.

89.      Defendants Moriarty, Tarala, Pagan, Hondzinski, and Sroka acted under the color of state law when they committed the acts alleged in the Amended Complaint.

90.      Defendants Moriarty, Tarala, Pagan, Hondzinski and Sroka proximately caused the deprivation of Sroga's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

91.      Defendants Moriarty, Tarala, Pagan, Hondzinski and Sroka's deprivation of Sroga's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors caused Sroga to suffer substantial harm including, but not limited to, physical pain and suffering and both mental and emotional distress.

## THIRD CLAIM FOR RELIEF

**Violation of the Fourth Amendment of the United States Constitution for Illegal Seizure and Search (Hondzinski)**

92.     Sroga repeats and realleges the allegations in paragraphs 1 through 73 above as set forth fully herein.

93.     Pursuant to the Fourth Amendment and 42 U.S.C. § 1983, Sroga has a right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

94.     Defendant Hondzinski acted under the color of state law when she committed the acts alleged in the Amended Complaint.

95.     Defendant Hondzinski knows Defendant Sroga and which vehicles he owns given their unique make and model as well as the location where they are parked.

96.     Defendant Hondzinski had no probable cause or reasonable suspicion that Sroga's vehicle was stolen or had stolen parts because of her history with Defendant Sroga as well as no indicia that the vehicle was stolen or contained stolen parts.

97.     Upon information and belief, Defendant Hondzinski has previously ordered at least one Confidential VIN check of one of Sroga's vehicles which was later determined to be unfounded.

98.     Defendant Hondzinski ordered the Confidential VIN check referenced in paragraph 37 of this Amended Complaint to harass and deprive Sroga of his Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

99.     By ordering the unlawful tow of Sroga's vehicle, Defendant Hondzinski unlawfully searched and seized Sroga's vehicle.

14

100.     Defendant Hondzinski proximately caused the deprivation of Sroga's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

101.     Defendant Hondzinski's deprivation of Sroga's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors caused Sroga to suffer substantial harm including, but not limited to, physical pain and suffering and both mental and emotional distress.

## FOURTH CLAIM FOR RELIEF

### Violation of the Fourth Amendment for False Arrest
### (Moriarty, Tarala, Pagan, Hondzinski, and Sroka)

102.     Sroga repeats and realleges the allegations in paragraphs 1 through 73 above as set forth fully herein.

103.     Pursuant to the Fourth Amendment and 42 U.S.C. § 1983, Sroga has a right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

104.     Sroga did not act in violation of any City of Chicago, Illinois, or federal law or ordinance by occupying his vehicle or in refusing to acquiesce to the requests to exit his vehicle made by Defendants Souchet and Kaminski.

105.      Defendants Moriarty, Tarala, Pagan, Hondzinski, and Sroka had neither probable cause nor reasonable suspicion to believe that Sroga had committed or had attempted to commit a crime at the time Defendants Moriarty, Tarala, Pagan, Hondzinski and Sroka arrived at the scene and unlawfully ordered Sroga to exit his vehicle.

106.     Upon observing that the City of Chicago did not yet have lawful possession of Sroga's vehicle, Defendants Moriarty, Tarala, Pagan, Hondzinski, and Sroka should have known

15

that no offense had been committed or was in the process of being committed. Until Sroga's vehicle was being moved, Sroga had a legal right to sit in his vehicle.

107.    At no point—from their arrival on the scene to taking Sroga to jail—was there a reasonable basis nor probable cause on which Defendants could have believed that Sroga had committed any crime, especially in light of the fact that the vehicle was not in lawful possession of the City of Chicago.

108.    Defendants Moriarty, Tarala, Pagan, Hondzinski, and Sroka acted under the color of state law when they committed the acts alleged in the Amended Complaint.

109.    By unlawfully detaining and falsely arresting Sroga, Defendants Moriarty, Tarala, Pagan, Hondzinski and Sroka were the proximate cause of Sroga's deprivation of his Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

110.    The Defendants Moriarty, Tarala, Pagan, Hondzinski and Sroka's deprivation of Sroga's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors caused Sroga to suffer substantial harm including, but not limited to, physical pain and suffering and both mental and emotional distress.

**FIFTH CLAIM FOR RELIEF**

**Violation of the Fourth Amendment of the United States Constitution for Excessive Force (Pagan)**

111.    Sroga repeats and realleges the allegations in paragraphs 1 through 73 above as set forth fully herein.

112.    Pursuant to the Fourth Amendment and 42 U.S.C. § 1983, Sroga has a right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

113.    Sroga did not act in violation of any city, state, or federal law or ordnance by occupying his vehicle before the tow operator began to engage in the towing of his vehicle or in refusing to acquiesce to the unlawful orders to exit his vehicle made by Defendant's Souchet and Kaminski.

114.    At all times, Sroga did not act violently, belligerently, or in any way threaten any of the Defendants.

115.    At all times, Sroga desired to speak with the police officer Defendants to resolve the difference in opinion regarding the tow and explain what Defendant's Souchet and Kaminski had done.

116.    After the unlawful and unreasonable under the circumstances entry into Sroga's vehicle by smashing a rear window, Sroga continued to remain in his seat and took no action against any of the Defendants.

117.    Defendant Pagan acted under the color of state law when he committed the acts alleged in the Amended Complaint.

118.    Defendant Pagan acted unreasonably under the circumstances when he pushed Sroga out of the vehicle, under threat of tazer, where he was converged upon and forcibly taken to the ground by multiple officers.  At no time during the excessively forcible takedown did Sroga resist.

119.    Defendants acted unreasonably under the reasonable under the circumstance by swarming Sroga who at no point made any threatening gestures or verbal threats.  Furthermore,

17

once Sroga was out of the vehicle the sheer number of officers who descended upon him, forced him to the ground, and stepped on his head to subdue Sroga, and continued to subdue Sroga when he was on the ground was clearly excessive and unreasonable given the circumstances given the set of circumstances.

120.    Once Sroga was out of his vehicle, he complied with the Defendant Pagan's orders, so the ensuing force used was unreasonable and unwarranted given that he was in compliance with their commands.

121.    While Sroga was in police custody in a holding room at the 14th District, Defendant Pagan slammed Sroga chest first into a cinderblock wall and said "Welcome to our house now bitch!"

122.    Pagan's act was unreasonable under the circumstances because it occurred while Sroga was cooperating with police officers, restrained in handcuffs, and in custody at the 14th district police station.

123.    By using excessive force against Sroga, Defendant Pagan proximately caused the deprivation of Sroga's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

124.    Defendant Pagan's deprivation of Sroga's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors caused Sroga to suffer substantial harm including, but not limited to, physical pain and suffering, and both mental and emotional distress.

18

## SIXTH CLAIM FOR RELIEF

**Violation of the Fourth Amendment of the United States Constitution for Malicious Prosecution (Moriarty, Tarala, Pagan, Hondzinski, Sroka, and Poremba)**

125.    Sroga repeats and realleges the allegations in paragraphs 1 through 73 above as set forth fully herein.

126.    Pursuant to the Fourth Amendment and 42 U.S.C. § 1983, Sroga has a right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.  This right also protects him from malicious and unwarranted prosecution.

127.    Sroga was subjected to judicial proceedings based on the unlawful arrest caused by Moriarty, Tarala, Pagan, Hondzinski, Sroka, and Poremba.

128.    At no point—from their arrival on the scene to taking Sroga to jail—was there a reasonable basis or probable cause on which Defendants Moriarty, Tarala, Pagan, Hondzinski, Sroka, and Poremba could have believed that Sroga had committed any crime, especially in light of the fact that the vehicle was not in lawful possession of the City of Chicago.

129.    Defendants Moriarty, Tarala, Pagan, Hondzinski, Sroka, and Poremba acted under the color of state law when they committed the acts alleged in the Amended Complaint.

130.    Defendants Moriarty, Tarala, Pagan, Hondzinski, Sroka, and Poremba instituted or continued a criminal prosecution against Sroga by the creation of false evidence and/or knowingly giving false police reports.

131.    The proceedings against Sroga were terminated in his favor when the case was dismissed on November 16, 2015.

132.    Defendants Moriarty, Tarala, Pagan, Hondzinski, Sroka, and Poremba maliciously commenced and/or continued a criminal action against Sroga without probable cause for the

institution of these proceedings. As a result, Sroga was injured emotionally, financially, and otherwise from the loss of his constitutionally protected liberty and related rights.

133.    Sroga has satisfied the requirements of a state law cause of action for malicious prosecution.

134.    The malicious prosecution was committed by Defendants Moriarty, Tarala, Pagan, Hondzinski, Sroka, and Poremba who were all state actors.

135.    As a result of the malicious prosecution, Sroga was deprived of liberty.

## SEVENTH CLAIM FOR RELIEF

**Civil Conspiracy under 42 U.S.C. § 1983(Moriarty, Tarala, Pagan, Hondzinski, and Sroka)**

136.    Sroga repeats and realleges the allegations in paragraphs 1 through 73 above as set forth fully herein.

137.    Defendants Moriarty, Tarala, Pagan, Hondzinski, and Sroka reached agreements among themselves to deprive Sroga of his Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

138.    In furtherance of this conspiracy, and as set forth in this Amended Complaint, each of the Defendants Moriarty, Tarala, Pagan, Hondzinski, and Sroka committed overt acts and/or were an otherwise willful participant in unlawful joint activity.

139.    Defendants Moriarty, Tarala, Pagan, Hondzinski, Sroka, and Poremba acted under the color of state law when they committed the acts alleged in the Amended Complaint.

140.    Defendants Moriarty, Tarala, Pagan, Hondzinski, and Sroka's deprivation of Sroga's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors caused Sroga to suffer

substantial harm including, but not limited to, physical pain and suffering, and both mental and emotional distress.

## EIGHTH CLAIM FOR RELIEF

**State Law Claim for Intentional Infliction of Emotional Distress (Hondzinski, Souchet, Kaminski, Moriarty, Tarala, Pagan, Sroka, Nowik, Roman, Echeverria, Butzen, Rosario, Gonzales, Poremba, Deja, John Doe, and Jane Doe)**

141.    Sroga repeats and realleges the allegations in paragraphs 1 through 73 above as set forth fully herein.

142.    The acts of Defendants Hondzinski, Souchet, Kaminski, Moriarty, Tarala, Pagan, Sroka, Nowik, Roman, Echeverria, Butzen, Rosario, Gonzales, Poremba, Deja, John Doe, and Jane Doe as set forth in this Amended Complaint were both extreme and outrageous.

143.    Defendants Hondzinski, Souchet, Kaminski, Moriarty, Tarala, Pagan, Sroka, Nowik, Roman, Echeverria, Butzen, Rosario, Gonzales, Poremba, Deja, John Doe, and Jane Doe acted under the color of state law when they committed the acts alleged in the Amended Complaint.

144.    Defendants Hondzinski, Souchet, Kaminski, Moriarty, Tarala, Pagan, Sroka, Nowik, Roman, Echeverria, Butzen, Rosario, Gonzales, Poremba, Deja, John Doe, and Jane Doe intended to cause, and/or acted in such reckless disregard of the probability that they would cause, severe emotional distress to Sroga.

145.    Defendants Hondzinski, Souchet, Kaminski, Moriarty, Tarala, Pagan, Sroka, Nowik, Roman, Echeverria, Butzen, Rosario, Gonzales, Poremba, Deja, John Doe, and Jane Doe intended to cause, and/or acted in reckless disregard of the probability that they would cause, severe emotional distress to Sroga.

146.    Defendants Hondzinski, Souchet, Kaminski, Moriarty, Tarala, Pagan, Sroka, Nowik, Roman, Echeverria, Butzen, Rosario, Gonzales, Poremba, Deja, John Doe, and Jane

Does' misconduct caused Sroga severe emotional distress, including causing him to suffer anxiety, fear of the police, and difficulty sleeping.

147. As a proximate result of the misconduct described above, Sroga suffered serious emotional and mental injuries and damages.

## NINTH CLAIM FOR RELIEF

### Supervisory Liability Under 42 U.S.C. § 1983 (Poremba)

148. Sroga repeats and realleges the allegations in paragraphs 1 through 73 above as set forth fully herein.

149. Pursuant to the Fourth Amendment and 42 U.S.C. § 1983, Sroga has a right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors. This right also protects him from malicious and unwarranted prosecution.

150. Defendant Poremba, as a supervising Sergeant of the Chicago Police Department was on the scene as alleged in the Amended Complaint.

151. Defendant Poremba not only knew about the conduct and facilitated it, but also participated directly in the deprivation of Sroga's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors. By arriving at the scene and continuing to seek to deprive Sroga of his constitutional rights by unlawfully ordering him out of his vehicle without probable cause or reasonable suspicion of any criminal activity, Defendant Poremba directly participated in the deprivation of Sroga's constitutional rights.

152. On information and belief, Defendant Poremba, as a Sergeant, participated in the decision to unlawfully and forcibly enter Sroga's vehicle.

22

153.    Defendant Poremba acted under the color of state law when he committed the acts alleged in the Amended Complaint.

154.    Defendants Moriarty and Tarala acted with little knowledge of the circumstances surrounding the unlawful acts of Defendants Souchet and Kaminski nor did they conduct any fact finding to determine what had factually occurred. This failure demonstrates that they acted with deliberate indifference to violating Sroga's constitutional rights.

### TENTH CLAIM FOR RELIEF

**Violation of the Eighth Amendment of the United States Constitution for Failure to Intervene (Poremba, Rosario, Butzen, Echeverria, Roman, Nowik, Gonzales and John and Jane Doe)**

155.    Sroga repeats and realleges the allegations in paragraphs 1 through 73 above as set forth fully herein.

156.    Pursuant to the Eighth Amendment and 42 U.S.C. § 1983, Sroga has a right to be free from cruel and unusual punishments, which includes protection from police officers that present substantial threats to his safety.

157.    A police officer has an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers.

158.    Defendants Poremba, Rosario, Butzen, Echeverria, Roman, Nowik, Gonzales and John and Jane Doe knew that Sroga's constitutional rights were being violated in numerous ways, including: the unlawful seizure of Sroga's vehicle by Defendants Souchet and Kaminski; by Defendants Moriarty and Tarala when they, without probable cause or reasonable suspicion, unlawfully ordered Sroga out of his vehicle; by Sergeant Poremba without probable cause or reasonable suspicion of the same, unlawfully ordered Sroga out of his vehicle, Defendant Pagan's unlawful and violent entry into Sroga's vehicle without probable cause or reasonable suspicion, the use of excessive force in the false arrest of Sroga unlawfully forced out of his

vehicle, the excessive force utilized in securing Sroga in handcuffs as well as slamming him into a cinder block wall within the 14th district police station without legal justification, and the malicious prosecution of Sroga.

159.    Defendants Poremba, Rosario, Butzen, Echeverria, Roman, Nowik, Gonzales and John and Jane Doe acted under the color of state law when they committed the acts alleged in the Amended Complaint.

160.    During Sroga's arrest and detention, excessive force was used.

161.    As all of these constitutional violations occurred over at least an approximate 15 minute period of time, the Defendants Poremba, Rosario, Butzen, Echeverria, Roman, Nowik, Gonzales and  John and Jane Doe had a realistic opportunity to intervene to prevent or stop these constitutional violations, and unreasonably failed to do so.

162.    The misconduct of these Defendants was objectively unreasonable and was undertaken intentionally and/or with willful indifference to Sroga's constitutional rights.

163.    As a proximate result of Defendants Poremba, Rosario, Butzen, Echeverria, Roman, Nowik, Gonzales and John and Jane Doe's failure to intervene, Sroga's constitutional rights were violated and he suffered injuries and damages as a direct result thereof.

**ELEVENTH CLAIM FOR RELIEF**

**Monell Liability (City of Chicago)**

164.    Sroga repeats and realleges the allegations in paragraphs 1 through 73 above as set forth fully herein.

165.    Upon information and belief, the underlying tow order issued for Sroga's vehicle was premised on an order for Confidential VIN check.

166.    Upon information and belief, the ordered Confidential VIN check ordered by CPD against Sroga's vehicles were done for the purpose of either knowingly removing a vehicle from the street without any legal basis to do so or as direct retaliation against Sroga.

167.    On approximately eight previous incidents CPD caused Sroga's vehicles to be towed based on an order for a Confidential VIN check without probable cause.

168.    The Confidential VIN checks of Sroga's vehicles were done for the purpose of harassment and as part of the widespread practice or policy of using Confidential VIN check orders issued without probable cause to remove vehicles from the public way or to harass specific vehicle owners.

169.    On information and belief there is no express city policy requiring probable cause for Confidential VIN checks or there is an implicit policy of allowing Confidential VIN checks without probable cause.

170.    This has led to the improper removal of vehicles from public streets without probable cause under the guise of Confidential VIN checks.

171.    Specifically, as to Sroga, the city's policy or lack thereof has lead to the baseless removal and pickup of Sroga's lawfully parked vehicles on city streets causing Sroga to suffer damages including serious emotional and mental injuries.

172.    The city's implicit polices or the gaps in its express polices have led to widespread abuse of the Confidential VIN check process and to deprivation of the Fourth Amendment rights of Sroga and other to be secure in their person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors

## **REQUEST FOR RELIEF**

WHEREFORE, Sroga requests that this Court enter judgment in his favor and against the Defendants and award the following relief:

25

a.  Compensatory damages to compensate Sroga for his pain and suffering in an amount to be determined at trial, jointly and severally against all Defendants;

b.  Punitive damages in an amount to be determined at trial, jointly and severally against all Defendants;

c.  An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

d.  And any other relief in Sroga's favor that this Court deems proper.

## DEMAND FOR JURY TRIAL

Sroga hereby demands trial by jury on all issues so triable.

Dated: March 16, 2017          Respectfully submitted,

s/*James A. White*
_____

James A. White
Juan C. Arguello
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585
jawhite@jonesday.com
jarguello@jonesday.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Amended Complaint has been filed electronically on March 16, 2017. Notice of this filing will be sent to all active parties by operation of the Court's electronic filing system, which will send notification of such filing by email to all counsel of record in the above-captioned proceeding.

/s/ *James A. White*