IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEVIN SROGA,

                    Plaintiff,

            v.

JENNIFER HONDZINSKI, *et al.*,

                    Defendants.

Case No. 16 C 5796

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are Motions to Dismiss all but one count of
an eleven-count Complaint. For the reasons stated herein, the
Court grants in part and denies in part the Motion brought by the
individual Defendants [ECF No. 52] and grants the Motion brought
by the City of the Chicago [ECF No. 54].

## I. BACKGROUND

Plaintiff Kevin Sroga ("Sroga"), as the Seventh Circuit has
remarked, is "a prolific civil litigant" who keeps both the courts
and the Chicago Police Department busy. *Sroga v. Weiglen,* 649
F.3d 604, 605-06 (7th Cir. 2011). In the past year and in this
district alone, Sroga has filed five separate lawsuits, all
alleging some sort of constitutional deprivations relating to the
tows of his vehicles. *See, Sroga v. Rendered Services Inc.,*
No. 17 C 03602 (alleging unlawful tows by agents of the State of

Illinois); *Sroga v. William,* No. 17 C 01333 (alleging unlawful seizures of his vehicles by employees of the Chicago Department of Streets and Sanitation); *Sroga v. Laboda,* No. 16 C 8366 (same); *Sroga v. Doe,* No. 16 C 6965 (same); *Sroga v. Hondzinski,* No. 16 C 5796 (same). This is one of those five cases.

In this lawsuit, Sroga brings an eleven-count Complaint against seventeen individuals and the City of Chicago. *See, generally,* ECF No. 39 (Am. Compl). The allegations in Sroga's Complaint fall into two categories: those relating to a specific event occurring on June 18, 2014 and those purporting to link the 2014 event to a larger conspiracy and municipal policy. Sroga leads with allegations regarding the conspiracy. Upon information and belief, he alleges that Chicago Police Officers Jennifer Hondzinski ("Hondzinski"), Sonia Moriarty ("Moriarty"), Edwin Pagan ("Pagan"), Tracey Sroka ("Stroka"), and Donna Tarala ("Tarala") (collectively, "the Core Defendants") "have agreed to target his vehicles for citation and towing in order to harass Sroga." Am. Compl. ¶ 25. Since about 2003, the Core Defendants, along with other Chicago Police Officers, "have ordered the towing of Sroga's vehicles approximately 30 or more times." *Id.* ¶ 24. Approximately eight of these 30 tows were done under the municipal policy that Sroga here complains about, the Confidential Vehicle Identification Number ("VIN") checks. *Id.* ¶ 25.

On further information and belief, Sroga alleges that the Chicago Police Department ("CPD") issues such a Confidential VIN check "to verify that the vehicle subject to the check has (1) a VIN Number and (2) verify that essential parts are not stolen." Am. Compl. ¶ 26. Furthermore, "when CPD lists a vehicle for a Confidential VIN check, it is towed and CPD personnel then search the vehicle to check and verify the VIN numbers." *Id.* ¶ 27. Sroga does not quarrel with the dual purpose of the Confidential VIN checks policy nor does he contend that the VINs can be verified without a tow. Instead, Sroga takes issue with the fact that the policy (allegedly) does not require CPD personnel to have "probable cause to believe the vehicles are stolen or have stolen parts" before listing them for VIN checks. *Id.* ¶ 28. Because of this gap in the policy and the "personal vendetta" that "police officers, including Defendant Hondzinski and Sroka have had against Sroga," his vehicles were subjected to numerous tows, all of which "were done without probable cause and solely for the purpose of harassment" and none of which was "found to be justified." *Id.* ¶¶ 23, 24, 29.

After making the above allegations about the putative conspiracy and municipal policy, Sroga switches gears and begins to allege the details of a tow that happened on June 18, 2014, one of the eight tows alluded to previously. According to Sroga, on

June 18, 2014 he arrived at his Ford Crown Victoria and found that a tow truck had pulled up in front of his vehicle. Sroga identified himself to the tow operator as the owner of the vehicle, and the operator told him that he had "a Tow Report" to remove the vehicle. Putting this report together with other "information and belief," Sroga surmised that "the tow was ordered by the Chicago Department of Streets and Sanitation based on a request by Defendant Hondzinski to conduct a confidential VIN check." *Id.* ¶ 37. Sroga requested the tow operator to contact his dispatch to cancel the tow. He then got into his car.

Shortly thereafter, two employees of the Chicago Department of Streets and Sanitation, Defendants Raymound Soutchet ("Soutchet") and Leroy Kaminski ("Kaminski") (collectively, "the Sanitation Defendants"), arrived on the scene "in response to a call that the tow operator had placed." *Id.* ¶¶ 38-42. When they got to the area, the Sanitation Defendants parked their vehicles in such a way as to make it "impossible for Sroga to drive his vehicle out of his parked space" or to "open[] his driver-side door." Am. Compl. ¶ 49. They asked Sroga to get out of his car, but he "declined their requests." *Id.* ¶ 50. At some point, the Sanitation Defendants instructed the tow operator to wrap his tow cable around the front bumper of Sroga's vehicle, and he did so. *Id.* ¶ 52.

About ten minutes after the Sanitation Defendants appeared, two of the Core Defendants – Officers Moriarty and Tarala – also arrived on the scene. Tarala attempted to open Sroga's door but was unable to do so as it was locked. She thereafter "unlawfully ordered Sroga to get out of his vehicle." Am. Compl. ¶ 57. He did not comply and instead requested that she "call a Sergeant to come to the scene." *Id.* Additional police officers then arrived. Of these officers, only Core Defendant Pagan is identified by name. Subsequently, a sergeant – presumably Sergeant James Poremba ("Poremba"), as he is the sole defendant named in the Complaint who is identified as a sergeant – also made an appearance. Both Defendant Pagan and Sergeant Poremba "unlawfully ordered [Sroga] to get out of his vehicle." Am. Compl. ¶ 58. "Sroga continued to stay in his vehicle." *Id.* Pagan then forced entry into the Ford Crown Victoria by breaking the rear passenger-side window, unlocking the door, and entering. He thereafter reached over to the driver's door, opened it, and pushed Sroga out.

Multiple officers then "descended upon [Sroga] to take him to the ground." Am. Compl. ¶ 64. Although Sroga did not resist, the officers "manhandl[ed]" him; one officer "placed a boot forcibly on his head pushing his face into the pavement," while others put "handcuffs on Sroga excessively tightly." *Id.* Sroga alleges that

as a result "of the unnecessary and excessive force used to take [him] to the ground, [he] suffered torn tendons in both his right and left elbows." *Id.* After being arrested, Sroga was transported to the police station and put in a holding room. While there, "Pagan slammed Sroga chest first into one of the walls," causing injuries to his chest and arms. *Id.* ¶ 66-67.

The arrest resulted in Sroga being charged with violating two Illinois statutes – criminal trespass to vehicles, 720 ILCS 5/21-2, and resisting or obstructing a peace officer, 720 ILCS 5/31-1-A. Am. Compl. ¶¶ 69-71. The charges "were never tried," and they were dismissed on November 16, 2015 "because the State was not ready when the case was called." *Id.* ¶ 72.

On June 2, 2016, Sroga filed this lawsuit. In the Amended Complaint, Sroga asserts the following eleven causes of actions: Count I: seizure of his person and property in violation of the Fourth Amendment against the Sanitation Defendants; Count II: the same illegal seizure but as asserted against the Core Defendants; Count III: search and seizure in violation of the Fourth Amendment against Defendant Hondzinski; Count IV: false arrest in violation of the Fourth Amendment against the Core Defendants; Count V: excessive force in violation of the Fourth Amendment against Defendant Pagan; Count VI: malicious prosecution in violation of the Fourth Amendment against Sergeant Poremba and the

Core Defendants; Count VII: conspiracy to deprive Sroga of his constitutional rights by the Core Defendants; Count VIII: a state-law claim for intentional infliction of emotional distress against Sergeant Poremba, the Core Defendants, and Chicago Police Officers Julie Butzen, David Deja, Cesar Echeverria, Robin Gonzalez, John Nowik, Edwin Roman, Nodal Rosario, and John and Jane Doe (collectively, "the Secondary Defendants"); Count IX: supervisory liability against Sergeant Poremba; Count X: violation of the Eighth Amendment for failure to intervene against Sergeant Poremba and the Secondary Defendants; and finally, Count XI: a *Monell* claim against the City of Chicago.

The Defendants seek to dismiss all but Count V of the Complaint (that alleging excessive force by Defendant Pagan). The Court grants in part and denies in part the Motions.

## II.  ANALYSIS

With the exception of the state-law action for intentional infliction of emotional distress (Count VIII), Sroga's claims all rest on 42 U.S.C. § 1983. *See, generally,* Am. Compl.; *see also, Allen v. City of Chi.,* 828 F.Supp. 543, 563 (N.D. Ill. 1993) ("Section 1983 provides a cause of action against municipalities and municipal employees, and the availability of this statutory remedy precludes direct claims under the Constitution."). The Court thus examines the Complaint while bearing in mind the

requirements of that statute.  It begins with the individual Defendants.

### A.  Streets and Sanitation Defendants

Sroga levies two charges at Sanitation Defendants Soutchet and Kaminski:  illegal seizure of his property (the Ford Crown Victoria) and illegal seizure of his person.  The Court addresses the second claim first.

The Court notes that Sroga does not allege that the Sanitation Defendants restrained his freedom to walk away from the scene.  He alleges only that they parked their cars in such a way that he could not leave by driving away in his vehicle or by exiting from his front driver-side door.  The Court is thus not convinced that the Sanitation Defendants limited Sroga's freedom of movement to the extent necessary to constitute seizure of his person.  *See, Terry v. Ohio,* 392 U.S. 1, 19 n.16 (1968) ("Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons.  Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.").

However, even if they did seize Sroga, the Sanitation Defendants cannot have been acting under color of state law in so doing.  This is crucial for Sroga's § 1983 claim because § 1983

"affords a 'civil remedy' for deprivations of federally protected rights caused by persons acting under color of state law." *Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330-31 (1986). Therefore, "state officials or employees who act without the cloth of state authority do not subject themselves to § 1983 suits." *Hughes v. Meyer,* 880 F.2d 967, 971 (7th Cir. 1989). Sroga's § 1983 claim against Defendants Soutchet and Kaminski thus fails because these Defendants are "without the cloth of state authority" to seize people.

It is important to keep in mind that Defendants Soutchet and Kaminski are employees of the Streets and Sanitation Department, not police officers. They therefore do not have police powers, including the power to stop, arrest, or generally seize people. If they effected such a seizure, then their action went beyond the performance of their job and thus was done without color of state law. *See, Honaker v. Smith,* 256 F.3d 477, 484-85 (7th Cir. 2001) ("[A]cts by a state officer are not made under color of state law unless they are related in some way to the performance of the duties of the state office.").

Moreover, Defendants Soutchet and Kaminski's authority to tow vehicles is expressly limited so that they do not seize people as they perform their towing duties. As Sroga acknowledges, Section

9-44-060 of the Chicago Municipal Code prohibits any person from operating "a vehicle to tow another vehicle if the towed vehicle contains one or more passengers." *See,* Am. Compl. ¶ 46. Any seizure of the kind Sroga alleges – that of his person as he sat in his car while it was being towed – is forbidden by the statute. As such, if the Sanitation Defendants seized Sroga, then they did so with power that the state says they absolutely do not possess. Their actions therefore fall outside the ambit of § 1983. *See, Wilson v. Price,* 624 F.3d 389, 393 (7th Cir. 2010) ("When officials possess no authority to act, we have found that their conduct is outside the ambit of § 1983."); *Gibson v. Chicago,* 910 F.2d 1510, 1518-19 (7th Cir. 1990) (stating that "we have found no authority for expanding [§ 1983 liability] to encompass the actions of an official who possessed absolutely no authority to act").

As for Sroga's claim that the Sanitation Defendants seized his vehicle, the Court believes that it is targeted at the wrong Defendants. It is true that Streets and Sanitation employees have the authority to tow cars. *See,* Chicago Mun. Code § 9-92-030. Unlike their alleged action in seizing Sroga, Defendants Soutchet and Kaminski acted under color of state law when they attempted to tow his car. However, merely alleging that a defendant acted under color of state law is not enough to state a § 1983 claim.

Sroga must also allege that the Sanitation Defendants' attempted tow deprived him of his constitutional rights. *See, Parratt,* 451 U.S. at 535 ("[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."). This, he has failed to do.

The gravamen of Sroga's claim against the Sanitation Defendants is that they violated the Fourth Amendment by attempting to tow his car when they did not have "probable cause to believe the vehicle[] [was] stolen or ha[d] stolen parts." Am. Compl. ¶ 28. But Sroga has cited no authorities to suggest that government employees who are not police officers must act with probable cause lest they violate the Constitution. Under Sroga's theory of the case, those who work for the Streets and Sanitation Department, like Defendants Soutchet and Kaminski, must independently make an assessment that a vehicle has been stolen before they may tow it. But clearly, Defendants Soutchet and Kaminski are unequipped to make such an assessment, as the Department of Streets and Sanitation does not train its workers to determine the probability that a crime has occurred or that they

are faced with evidence of it. Such is the province of police officers, not Streets and Sanitation employees.

The Court thus concludes that because they were neither "plainly incompetent" nor "knowingly violat[ing] the law" when they prevented Sroga from driving away in his car, the Sanitation Defendants are shielded by qualified immunity. *See, Hughes,* 880 F.2d at 971 ("Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who knowingly violate the law.") (internal quotation marks omitted). Simply put, Sroga cannot sue them as he did here.

For these reasons, the Court dismisses Count I of the Complaint. Furthermore, as it does believe that Sroga cannot cure his Complaint against the Sanitation Defendants by amending, it orders the dismissal with prejudice.

## B. Chicago Police Officers

The Court next examines the claims brought against the Chicago Police Officer Defendants, a group which consists of Sergeant Poremba, the Core Defendants, and the Secondary Defendants. (Although Sroga does not mention the Secondary Defendants in the factual allegations of his Complaint, the Court assumes that they were the additional officers who arrived on the scene shortly before Sergeant Poremba.) While the claims against these Defendants seem endless, the Defendants argue that they

should all be dismissed for three reasons:  probable cause, statute of limitations, and inadequate factual pleading.

### 1. *Probable Cause to Defeat the Fourth Amendment Claims*

The Officer Defendants argue that they had probable cause to arrest Sroga.  As such, they say that Sroga's Fourth Amendment claims for illegal seizure (Counts II through IV) and that for malicious prosecution (Count VI) must be dismissed.  The Court addresses one-by-one these two groups of claims.

The Defendants are correct that the existence of probable cause skunks the Fourth Amendment illegal seizure claims.  As the Seventh Circuit has said, "[t]he existence of probable cause to arrest a suspect for any offense . . . will defeat a Fourth Amendment false-arrest claim." *Weiglen,* 649 F.3d at 608.  Ergo, Count IV must be dismissed if the Defendants had probable cause to arrest Sroga, and so must Counts II and III, since a Fourth Amendment false arrest claim subsumes the illegal seizure claims. *See, Terry,* 392 U.S. at 16 (indicating that the terminus of Fourth Amendment seizures is "a trip to the station house and prosecution for crime – 'arrests' in traditional terminology").  The question is whether Sroga has adequately alleged that the officers acted without probable cause.  (The Court notes that although Count III involves a claim for illegal search as well as seizure, Sroga has

not alleged any search of his person or vehicle. The Court thus does not consider this part of the claim any further.)

The Seventh Circuit has told Sroga himself that in circumstances like those alleged here, police officers have probable cause to arrest. As Sroga well knows, he had in *Weiglen* sued Chicago police officers for three separate arrests they made of him, two of which involved the tows of his vehicles and are relevant here. In the first incident, Sroga had an altercation with a tow truck driver who was attempting to remove his car. *Weiglen,* 649 F.3d at 605. The altercation and ensuing spectators summoned a police officer who told Sroga to let the driver do his job. "Instead Sroga leapt onto the moving car as it was being towed away." *Id.* "At that point he was arrested." *Id.* In the second incident, Sroga "got into another spat with a City employee" who was trying to tow a car parked in front of his house. *Id.* "To prevent the car from being towed, Sroga got into it as the driver was hooking it up to the tow truck, and despite repeated demands by police that he get out of the car he refused to budge until a sergeant showed up and ordered him to get out." *Id.* The police then arrested him.

The district court in *Weiglen* granted summary judgment to the defendant police officers on Sroga's claims that the arrests violated his constitutional rights, and the Seventh Circuit

affirmed. Writing for the court, Judge Richard Posner explained that the police officers had probable cause to arrest Sroga for "knowingly resisting or obstructing the performance by one known to the person to be a peace officer . . . of any authorized act within his official capacity." *Weiglen,* 649 F.3d at 608 (internal alteration and quotation marks omitted). That is, the police had probable cause to arrest Sroga for violating 720 ILCS 5/31-1(a), the statute under which he was charged in this case. *See,* 720 ILCS 5/31-1(a) ("A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her official capacity commits a Class A misdemeanor."). Such probable cause existed because "Sroga disobeyed police officers' lawful orders that he not impede the towing of his car." *Id.* Both times, he violated 720 ILCS 5/31-1(a) by "refusing to desist from behavior that was obstructing the efforts of the police to enable his car to be towed." *Id.*

There is no question that Sroga has alleged the same conduct in this case. More than once, he pleads that despite multiple orders from the Defendants to exit the vehicle, he refused to budge. Ergo, as with his previous arrests, Sroga "refus[ed] to desist from behavior that was obstructing the efforts of the police to enable his car to be towed." *Weiglen,* 649 F.3d at 608.

The Police Officer Defendants thus had probable cause to arrest him for exactly the crime with which he was charged.

In an attempt to plead around *Weiglen,* Sroga in the Complaint presses again and again that "[u]ntil Sroga's vehicle was being moved, Sroga had a legal right to sit in his vehicle." *See, e.g.,* Am. Compl. ¶¶ 87-88, 104-107, 113. Sroga thus appears to concede that had he "leapt onto the moving car as it was being towed," like he did in the first arrest described in *Weiglen,* then the police could have lawfully arrested him. However, because the car was not yet moving when he got into it, Sroga asserts that the police should have allowed him to sit there until he felt like leaving and the tow operator may do his job.

The Court cannot adopt such a proposition of law. For one, the theory means that whether the police may arrest in such situations depends primarily on the progress of the tow rather than the (eventual) arrestee's behavior. If the arrestee gets into the car just before it begins moving, then the police may not order him to step out; but if the arrestee is a tad late and the tow operator has put his foot on the gas pedal, then the police may arrest him. Sroga has cited no authority to support such a conception of the Fourth Amendment, and the Court is loath to think that the Constitution forces tow operators to race against vehicle owners.

For another, Sroga's theory of the case improperly circumscribes the holding from *Weiglen*. In particular, he seems to have (conveniently) forgotten about the second arrest that the *Weiglen* court considered. In that second incident, Sroga was arrested after he "got into [his vehicle] as the driver was hooking it up to the tow truck, and despite repeated demands by police that he get out of the car he refused to budge." *Weiglen,* 649 F.3d at 605. The vehicle was not moving when Sroga got into it, yet the Seventh Circuit still found that the police had probable cause to arrest Sroga for doing exactly what he did here: refusing to exit a to-be-towed vehicle despite repeated police orders to do so.

In sum, the holding from *Weiglen* controls the case at bar and compels dismissal of Sroga's Fourth Amendment seizure claims. Moreover, it is of no import that the Seventh Circuit in *Weiglen* was reviewing a grant of summary judgment and the Court is here deciding a Motion to Dismiss. Although it is true that "the existence of probable cause is a fact-based inquiry," *Gay v. Robinson,* No. 08-4032, 2009 U.S. Dist. LEXIS 5904, at *9 (C.D. Ill. Jan. 26, 2009), "where the underlying facts are not in dispute, the existence of probable cause is a question of law" amendable to being decided on a motion to dismiss. *Rusinowski v. Vill. of Hillside,* 835 F.Supp.2d 641, 648 (N.D. Ill. 2011) (citing

*United States v. Ellis,* 499 F.3d 686, 688 (7th Cir. 2007)).  In determining whether the police had probable cause to arrest, the Court accepts Sroga's well-pleaded allegations as true and finds, based on his account of the facts, that probable cause existed as a matter of Seventh Circuit law.  Dismissal is appropriate in such a case. *Id.*

In addition to the Fourth Amendment seizure claims, Sroga asserts a Fourth Amendment malicious prosecution action against Sergeant Poremba and the Core Defendants (Count VI).  Although the presence of probable cause also defeats such a claim, *see, Reed v. City of Chi.,* 77 F.3d 1049, 1051 (7th Cir. 1996) (listing the elements of a malicious prosecution claim), the Court can dismiss this count on an alternative basis:  Sroga's claim for malicious prosecution is no more than a poorly labeled false arrest claim.

At bottom, Sroga says nothing in pleading his claim for malicious prosecution other than that the Defendants arrested him without probable cause.  As alleged in the Complaint, the Core Defendants and Sergeant Poremba "maliciously commenced and/or continued a criminal action against Sroga without probable cause." Am. Compl. ¶ 132.  The "criminal action" is Sroga's arrest, and the allegations that the Defendants detained Sroga without probable cause state a claim for false arrest, not malicious prosecution.  *See, Snodderly v. R.U.F.F. Drug Enf't Task Force,*

239 F.3d 892, 901 (7th Cir. 2001) ("[I]n order to state a claim for malicious prosecution against the police officers under § 1983, [a plaintiff] must do more than merely claim that they arrested and detained him without probable cause."); *Bullock v. Calumet Park,* No. 00 C 6364, 2001 U.S. Dist. LEXIS 11078, at *8 (N.D. Ill. July 26, 2001) ("A plaintiff who 'alleges only that he was arrested and detained without probable cause has only pled false arrest,' and cannot simply convert that claim into one for malicious prosecution.") (quoting *Sneed v. Rybicki,* 146 F.3d 478, 481 (7th Cir. 1998)).

Nor does Sroga's single, conclusory allegation about the Defendants' post-arrest conduct save his malicious prosecution claim. It is true that Sroga pleads in Paragraph 130 of the Complaint that the Defendants "instituted or continued a criminal prosecution against Sroga by the creation of false evidence and/or knowingly giving false police reports." Am. Compl. ¶ 130. However, the Court is at a loss to infer what false evidence Sroga could be referring to, as he makes no mention of any such evidence elsewhere in the Complaint. In fact, since Sroga alleges that "[t]he charges [stemming from his June 2014 arrest] were never tried," and that "the Judge dismissed the charges because the State was not ready when the case was called," Am. Compl. ¶ 72, it

does not appear that there was any judicial proceeding during which evidence could have been entered.

As for the false police reports, the Court is puzzled as to how it is that Officer Sroka could have created a police report, given that she is not alleged to have been present at the scene during the June 2014 towing. But even assuming that there were false reports filed by all of the relevant Defendants, they do not rise to the type of post-arrest misconduct that states a malicious prosecution claim. Unlike the kind of police misconduct that impacts a prosecution – for example, that the police "pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence" – the false police reports at issue here are not alleged to have influenced the prosecutor or otherwise affected Sroga's prosecution. *Snodderly,* 239 F.3d at 901; *accord Sneed,* 146 F.3d at 481. As such, the reports are inadequate to remove the malicious prosecution claim from the realm of "anomalous" or raise a right to relief. *See, Reed,* 77 F.3d at 1053 (agreeing that "absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor" "a malicious prosecution action against police officers is 'anomalous' . . . because the State's Attorney, not the police, prosecutes a criminal action") (quoting

*Albright v. Oliver,* 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., concurring)).

For these reasons, the Court dismisses Counts II, III, IV, and VI of the Complaint.

### 2. Statute of Limitations to Defeat the Intentional Infliction of Emotional Distress Claim

The Court also agrees with the Defendants that Count VIII for intentional infliction of emotional distress ("IIED") is time-barred. A one-year statute of limitations applies to an IIED claim asserted against local governmental employees like the Chicago Police Officer Defendants. *See,* 745 ILCS 10/8-101 ("No civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued."); *Williams v. Lampe,* 399 F.3d 867, 870 (7th Cir. 2005). Moreover, the one-year period begins on the date of Sroga's arrest. This is a consequence of the fact that, as with his (now-dismissed) malicious prosecution claim, Sroga's IIED claim rests on conduct relating to his arrest. *See,* Am. Compl. ¶¶ 68, 141-47 ("Sroga sustained and still continues to suffer from trauma, humiliation, fear, undue stress, lost wages, and the loss of employment as a result of his arrest and injuries."). In such circumstances, the Seventh Circuit has made clear that the clock starts ticking on the date of the

arrest. As the court stated in *Bridewell v. Eberle,* 730 F.3d 672, 678 (7th Cir. 2013), "a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest."

Therefore, since Sroga was arrested on June 18, 2014, he had until June 18, 2015 to bring his IIED claim. By not filing suit until June 2, 2016, Sroga is too late by nearly a year. Accordingly, his IIED claim is time-barred and must be dismissed with prejudice.

Sroga's arguments to the contrary are unpersuasive. He argues that his IIED claim did not accrue until the charges against him were dismissed on November 16, 2015. This is because, says Sroga, his malicious prosecution claim did not accrue until that date and his IIED claim is "based on the same conduct that form[s] the basis of his malicious prosecution claim." ECF No. 63 at 13-14. Admittedly, some courts in this district have adopted such an approach, holding that "when an IIED claim is based on the same conduct that forms the basis of that malicious prosecution claim, the cause of action does not accrue until criminal proceedings are terminated in the plaintiff's favor." *Renaud v. City of Chi.,* No. 12 CV 08758, 2013 U.S. Dist. LEXIS 71424, at *15 (N.D. Ill. May 21, 2013); *accord, La Playita Cicero, Inc. v. Town of Cicero,* No. 11 CV 1702, 2014 U.S. Dist. LEXIS 31070, at *43-44

(N.D. Ill. Mar. 11, 2014). However, the validity of those decisions has been cut from under their feet by *Bridewell*.

As discussed previously, the Seventh Circuit in *Bridewell* held that the accrual date for an IIED claim based on an arrest "accrues on the date of the arrest." *Bridewell,* 730 F.3d at 678. In reaching this conclusion, the *Bridewell* court relied on *Evans v. City of Chi.,* a case where the Seventh Circuit confronted the precise argument that Sroga here advances. *See, Evans,* 434 F.3d 916, 934 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini,* 724 F.3d 965, 967 n.1 (7th Cir. 2013). Like Sroga, the plaintiff in *Evans* sought to avoid the statute of limitations by arguing that his IIED claim "did not accrue until the termination of the state criminal proceedings against him." *Id.* The Seventh Circuit rejected the argument, hewing instead to "the default rule . . . that a cause of action for personal injuries accrues when the plaintiff suffers injury." *Id.* (internal quotation marks omitted). Thus, when a plaintiff suffers emotional distress because of an arrest, the date of the arrest is the date when the statute of limitations clock begins ticking.

Clearly, *Bridewell and Evans* trump any district court decisions to the contrary. Indeed, since *Bridewell,* "courts in this district have consistently applied [the arrest-accrual rule] broadly, holding that IIED claims of this sort accrue on the day

of arrest, even where the distress alleged is 'intertwined' with a claim for malicious prosecution." *Friends-Smiley v. City of Chi.,* No. 16-cv-5646, 2016 U.S. Dist. LEXIS 144657, at *5-6 (N.D. Ill. Oct. 19, 2016) (collecting cases). Insofar as the two cases cited by Sroga held differently, they appear to be against both the trend and law in this circuit.

Relatedly, Sroga argues that his IIED claim is a "continuing tort" and, in particular, that it continued until the charges against him were dismissed. It is true that the Illinois Supreme Court has decided in an opinion to allow an IIED claim to be maintained as a continuing tort. *See, Feltmeier v. Feltmeier,* 207 Ill. 2d 263, 284 (2003). However, the court was careful to delineate circumstances permitting such treatment. As the court stated, "[a] continuing violation or tort is occasioned by continuing unlawful acts and conduct." *Id.* at 278. In contrast, "where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Id.*

Sroga's case presents "a single overt act" – his arrest on June 18, 2014. Sroga has made no allegation of any "unlawful acts and conduct" occurring after that date. He has pleaded no interaction with the Defendants after June 18, 2014 and no fresh

act to inflict injury other than those from the June 18 arrest. *Cf. Hill v. City of Chi.,* No. 06 C 6772, 2007 U.S. Dist. LEXIS 40211, at *5, 18 (N.D. Ill. May 10, 2007) (finding that the plaintiff's "allegations may support a continuing tort theory" when the allegations include charges that the police obtained "false confessions secured by means of improper coercion during police interrogations" and that plaintiff was convicted and imprisoned for murder based upon the coerced confessions). As such, even though an IIED claim may be treated as a continuing tort, in this case, nothing continued Sroga's IIIED action past the date of his arrest.

In sum, because Count VIII pleads a claim that is barred by the statute of limitations, the Court dismisses it with prejudice.

### 3. Inadequate Factual Pleadings to Support the Conspiracy Claim

To plead civil conspiracy (Count VII), Sroga must allege "facts [to] support an agreement between the defendants." *Kunik v. Racine Cty.,* 946 F.2d 1574, 1580 (7th Cir. 1991). That is, he must allege acts that "raise the inference of mutual understanding" between the purported conspirators. *Id.* "[A]cts performed together by the members of a conspiracy" meet that threshold "when they are unlikely to have been undertaken without an agreement." *Id.* Finally, such allegations must be "apparent in

the complaint" since "a whiff of the alleged conspirators' assent cannot await discovery." *Id.*

Sroga's allegations to suggest conspiracy are woefully inadequate.  They consist of the following:

> "Upon information and belief, Defendants Hondzinski, Sroka, and Tarala know what vehicles belong to Sroga, and Defendants Moriarty, Tarala, Pagan, Hondzinski, and Sroka have agreed to target his vehicles for citation and towing in order to harass Sroga." Am. Compl. ¶ 25.

> "Police Officers in the 14th district, including Defendants Moriarty, Tarala, Pagan, Hondzinski, and Sroka have ordered the towing of Sroga's vehicles approximately 30 or more times." *Id.* ¶ 24.

> "Since on or about 2003, the police officers, including Defendant Hondzinski and Sroka have had a personal vendetta against Sroga, which has lead [sic] to numerous unfounded citations, arrests, and harassment." *Id.* at ¶ 28.

> "Upon information and belief, the [June 2014] towing was ordered by the Chicago Department of Streets and Sanitation based on a request by Defendants [sic] Hondzinski to conduct a confidential VIN check." *Id.* ¶ 37.

The Complaint thus mixes allegations about the purported conspirators with those about non-conspirators, doing so in such a way as to make it impossible to infer what the conspirators did that they were unlikely to have done "without any agreement." *Kunik,* 946 F.2d at 1580.  For example, Sroga's most concrete allegation is that the conspirators ordered the towing of his vehicles.  However, he alleges that non-conspirators did so as well.  As the allegation states, "Police Officers in the 14th

district, including Defendants Moriarty, Tarala, Pagan, Hondzinski, and Sroka have ordered the towing of Sroga's vehicles approximately 30 or more times." Am. Compl. ¶ 24. The allegation thus asserts that non-conspirators were responsible for least some of the tows and otherwise gives no indication as to how many tows were initiated by the conspirators versus the non-conspirators. Given such an allegation, that the conspirators, too, ordered some tows cannot raise a reasonable inference of an agreement. After all, those who did not agree engaged in the same conduct, and there is no allegation that they did so less frequently, only when justified, or unaccompanied by the improper motive to harass Sroga. Likewise, that alleged conspirators Hondzinski and Sroka "have had a personal vendetta against Sroga" does not suggest that the two of them conspired against him since, as pleaded, other unnamed, uncharged police officers did as well. The personal animus thus was not sufficient to motivate the conspiracy; and it does not explain why the three other alleged conspirators – Officers Moriarty, Pagan, and Tarala – joined the campaign to harass Sroga.

As further evidence of their inadequacy, the allegations do not give the five conspirator Defendants notice of what they are charged with. For instance, are they charged with having ordered the towing of Sroga's vehicles, like Hondzinski did? Or do they

stand accused for every instance in which they simply showed up at the scene, like Moriarty and Tarala did at the June 2014 incident? Or are they accused even if they were not present, as was the case with Sroka during the June 2014 event? By failing to give notice, Sroga has fallen short of even the very undemanding standard for pleading conspiracy articulated in *Walker v. Thompson* that he here presses for. *See, Walker v. Thompson,* 288 F.3d 1005, 1007-08 (7th Cir. 2002) ("[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with."). *But see*, *id.* (explaining that allegations of conspiracy fail as to a defendant deputy when he "had not participated in the [complained-of unlawful] search, and the complaint did not so much as hint at what role he might have played or agreed to play in relation to the search"); *Roehl v. Merrilees,* No. 11 C 4886, 2012 U.S. Dist. LEXIS 50253, at *22 (N.D. Ill. Apr. 10, 2012) (calling into question the continuing validity of *Walker* given that "*Walker* was decided prior to the Supreme Court's decisions in *Twombly* and *Iqbal,* which impose a plausibility standard on all pleadings").

This is to say nothing of the more rigorous pleading that the Seventh Circuit, outside of *Walker,* has demanded. In *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir. 2009), for example, the court recognized that "conspiracy allegations were often held to a

higher standard than other allegations," and rightly so, as "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough." In particular, "the height of the pleading requirement is relative to circumstances." *Id*. In this case, Sroga has alleged that five Chicago police officers conspired to harass him for over a decade out of nothing more than personal animus. They ordered the towing of his vehicles as often as "30 or more times," caused "numerous unfounded citations, arrests, and harassment," and involved an untold number of their colleagues in their unlawful, but open and notorious, harassment. Given the circumstances of what he pleads – a vast and sprawling conspiracy born of nothing more than perceived personal antipathy – Sroga "must meet a high standard of plausibility." *See, Cooney,* 583 F.3d at 971 (stating that when a case "may be paranoid pro se litigation, arising out of a bitter custody fight and alleging, as it does, a vast, encompassing conspiracy . . . the plaintiff must meet a high standard of plausibility").

Sroga plainly fails this standard. Not only has he not met a "high standard," he has not even come up to plausibility. He has not alleged "who conspired to commit which violations or offer any facts that suggest that there was an overarching scheme involving all defendants." *Sroga v. Decero,* No. 09 C 3286, 2010 U.S. Dist.

LEXIS 119594, at *9 (N.D. Ill. Nov. 9, 2010) (holding that "[w]ithout such allegations, this [conspiracy] claim does not satisfy either Rule 8 or the dictates of *Twombly* and *Iqbal*"). He also has not alleged "facts or circumstances upon which either an express or implied agreement between Defendants could be inferred above the speculative level." *Roehl,* 2012 U.S. Dist. LEXIS 50253, at *22 (dismissing a plaintiff's claim alleging conspiracy in the absence of such allegations) (internal quotation marks omitted). At bottom, Sroga has articulated nothing more than "suspicion that persons adverse to the plaintiff had joined a conspiracy against him." *Cooney,* 583 F.3d at 971. This is not enough. *Id.*

For these reasons, the Court dismisses Count VII of the Complaint.

### 4. Lack of Constitutional Violations to Support Secondary Liability

Given the above dismissals of the Fourth Amendment claims, the Court also dismisses the secondary liability claims that are premised on those underlying constitutional violations.

The two secondary liability claims in this case are Counts IX and X. Count IX charges Sergeant Poremba with supervisory liability, but only for "unlawfully ordering [Sroga] out of his vehicle" and participating in the decision "to unlawfully and forcibly enter Sroga's vehicle." Am. Compl. ¶¶ 151-52. As the Court has ruled that the police had probable cause to arrest

Sroga, neither of these complained-of acts is a constitutional violation of his rights. Accordingly, the claim against Sergeant Poremba is dismissed. *See, Corbett v. Biggs,* No. 01 C 7421, 2005 U.S. Dist. LEXIS 7883, at *31-32 (N.D. Ill. Mar. 23, 2005) ("A section 1983 claim for supervisory liability, whether in an individual or official capacity, requires an underlying constitutional violation by an officer who was subject to the defendant's supervision.") (citing *Higgins v. Correctional Medical Servs. of Illinois, Inc.,* 178 F.3d 508, 513-14 (7th Cir. 1999); *Estate of Phillips v. City of Milwaukee,* 123 F.3d 586, 596-97 (7th Cir. 1997)).

Likewise, the claim for failure to intervene (Count X) is dismissed to the extent that it complains of lawful conduct. *See, Harper v. Albert,* 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation[.]"); *Chatman v. City of Chi.,* No. 14 C 2945, 2015 U.S. Dist. LEXIS 28707, at *24 (N.D. Ill. Mar. 10, 2015) ("To recover on a failure to intervene claim, a plaintiff must plead an underlying violation of his constitutional rights.").

However, as Count X also incorporates the allegation that Sergeant Poremba and the Secondary Defendants failed to intervene in the "use of excessive force in the false arrest of Sroga," and

the excessive force claim against Defendant Pagan (Count V) is unchallenged, this part of the claim survives. Nonetheless, excessive use of force at the scene of the arrest is the only underlying constitutional violation on which Count X may proceed. This is because Sroga has made no allegation that Sergeant Poremba and the nine Secondary Defendants were even present during the incident at the station where Defendant Pagan is alleged to have slammed Sroga against a wall. Without such an allegation, the incident cannot support a failure to intervene claim. *See, e.g., Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994) (requiring as elements of a failure to intervene claim that a police officer was present, had reason to know that excessive force was being used, and "had a realistic opportunity to intervene to prevent the harm from occurring").

The Court thus dismisses Count IX of the Complaint but allows Count X, as limited, to proceed.

### C. City of Chicago

The Court has reached the last count in this eleven-count Complaint: the *Monell* claim as asserted against the City of Chicago. In this count, Sroga charges that the City is liable for his injuries because its policy of allowing for Confidential VIN checks without requiring probable cause deprived him of his constitutional rights. The City responds that Sroga has not

pleaded any such municipal policy and therefore his claim must fail.

The parties agree, as well they should, that the existence of a municipal policy is crucial to Sroga's § 1983 claim against the City. *See, Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy . . . inflicts the injury that the government as an entity is responsible under § 1983."); *accord, Gable v. City of Chi.,* 296 F.3d 531, 537 (7th Cir. 2002). The parties also agree that Sroga has pleaded no act of a final policymaker; as such, he must make out either an express policy or an implied policy in the form of a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *See, Gable,* 296 F.3d at 537 (internal quotation marks omitted) (listing the above as ways to establish a municipal policy). Sroga grasps for both prongs, alleging both a gap in the express policy and an implied policy. Nevertheless, his burden, and the Court's analysis, does not change depending on which of these he pleads. *See, Calhoun v. Ramsey,* 408 F.3d 375, 380 (7th Cir. 2005) ("[W]e think that it is more confusing than useful to distinguish between claims about express policies that fail to address certain issues,

and claims about widespread practices that are not tethered to a particular written policy.").

Whatever form of *Monell* liability he reaches for, Sroga must plead facts allowing for the reasonable inference that "there is a true municipal policy at issue, not a random event." *Calhoun,* 408 F.3d at 380. Because "[n]o government has, or could have, policies about virtually everything that might happen," it is not enough for Sroga to state that the City's Confidential VIN checks policy lacks a probable cause requirement and so is unconstitutional on its face. *Id.* Instead, as with an implied policy, Sroga must allege facts indicating that the City "must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Thomas v. Cook Cty. Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2009). That is, Sroga must allege that the City was deliberately indifferent because enough incidents have arisen so that the City should have been aware of the constitutional violations caused by the practice. *See, Gable,* 296 F.3d at 538 (requiring enough incidents "to indicate that the City had a widespread custom of which City policymakers had reason to be aware"); *Calhoun,* 408 F.3d at 380 ("Both in the widespread practice implicit policy cases and in the cases attacking gaps in express policies, what is needed is evidence . . . [to suggest

that] the same problem has arisen many times and the municipality has acquiesced in the outcome [as then] it is possible (though not necessary) to infer that there is a policy at work.").

The City takes two tacks in arguing that Sroga has not pleaded that the City was deliberately indifferent. First, it points out that Sroga has made allegations with regards to only his own experience. Personal experience, says the City, does not make out a municipal policy since, by its nature, a policy necessarily affects persons other than the plaintiff.

The Court disagrees insofar as it does not think that reliance on personal experience is an absolute bar to pleading a municipal policy. *See, Grieveson v. Anderson,* 538 F.3d 763, 774 (7th Cir. 2008) ("[I]t is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience."). The reason that a plaintiff's own experience may fall short is that many plaintiffs only have a single brush with the municipal policy. *See, e.g., Klinger v. City of Chi.,* No. 15-CV-1609, 2017 U.S. Dist. LEXIS 26653, at *3-13 (N.D. Ill. Feb. 24, 2017) (pleading constitutional violations based on one instance of excessive use of force and cover-up); *Lanton v. City of Chi.,* No. 16 C 2351, 2017 U.S. Dist. LEXIS 19741, at *3-9 (N.D. Ill. Feb. 13, 2017) (complaining about a single failure to promote); *Kowalski v. Cty.*

*of Dupage,* No. 2013 CV 526, 2013 U.S. Dist. LEXIS 110967, at *2-3 (N.D. Ill. Aug. 7, 2013) (pleading one incident of excessive force stemming from single arrest). Their personal experience thus is inadequate because "allegation of a single incident of unconstitutional conduct by a municipal employee usually does not establish a sufficient basis for suing the municipality." *Strauss v. City of Chi.,* 760 F.2d 765, 767 (7th Cir. 1985); *see also, Thomas,* 604 F.3d at 303 ("[T]here is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even three.") (internal citations and quotation marks omitted); *Klinger,* 2017 U.S. Dist. LEXIS 26653, at *51-61 (dismissing the *Monell* claims for failure to make out a municipal policy based on allegations of a single instance of constitutional violation); *Lanton,* 2017 U.S. Dist. LEXIS 19741, at *12-17 (same); *Kowalski,* 2013 U.S. Dist. LEXIS 110967, at *6-7 (same).

However, Sroga's Complaint does not fall prey to this vulnerability. He has alleged more than one encounter with the City's policy. Specifically, he has alleged eight instances in which the City allegedly conducted an unlawful Confidential VIN check on his vehicle. In recognition of the fact that Sroga's experience with tows and arrests certainly is plentiful, the Court will not dismiss his Complaint on the ground that he has pleaded

only his personal experience. *See, Ojeda v. Kramer,* No. 15 CV 7309, 2017 U.S. Dist. LEXIS 51717, at *13-14 (N.D. Ill. Apr. 5, 2017) ("The sum of Plaintiff Ojeda's multiple allegations, taking place over the course of up to two months, do not constitute a single incident or a random event.") (internal quotation marks omitted); *Barrios v. City of Chi.,* No. 15 C 2648, 2016 U.S. Dist. LEXIS 4951, at *19-20 (N.D. Ill. Jan. 14, 2016) ("Barrios has alleged that on multiple occasions — not just a single time — he tried to get his car back by providing what should have been definitive documentation establishing his right to drive his Honda out of the pound, scot-free. . . . These allegations plausibly suggest that the City acted pursuant to a policy of trying to part people in Barrios' situation from their cars[.]"); *Hare v. Cty. of Kane,* No. 14 C 1851, 2014 U.S. Dist. LEXIS 172541, at *5-6 (N.D. Ill. Dec. 15, 2014) (denying a motion to dismiss when the plaintiff has "alleged frequent instances of a failure to provide adequate medical treatment over a twenty-five day period").

Second, and more on point, the City argues that Sroga's eight incidents cannot reasonably give rise to an inference that the City was aware of a pattern of wrongful conduct. That is, even if the incidents Sroga pleads had happened to eight different individuals, then still, the incidents are insufficient to make out a policy. This is because the alleged incidents occurred over

the course of more than a decade – any time from 2003 to 2014. This comes out to less than one unlawful Confidential VIN check every year. One incident every year would hardly be enough to put any City policymaker on notice that a pervasive, widespread pattern of wrongful conduct was taking place.

The Court agrees. The tows alleged here are unlike the situations in any of the cases where the courts have found a plaintiff's personal experience sufficient to make out a municipal policy. In particular, the sporadic tows that Sroga has alleged bear no resemblance to the "frequent instances of a failure to provide adequate medical treatment over a twenty-five day period" pleaded in *Hare*. *Hare*, 2014 U.S. Dist. LEXIS 172541, at *5. Neither are they like the "continual[] . . . improper dosages" the plaintiff in *Ojeda* received over two months. *Ojeda*, 2017 U.S. Dist. LEXIS 51717, at *13-14 (internal quotation marks omitted). Nor do the periodic tows stretching over ten years recall the every-few-day refusals by the City to release the plaintiff's car in *Barrios*. *Barrios*, 2016 U.S. Dist. LEXIS 4951, at *10.

In sum, the Court concludes that Sroga's eight tows are too scattershot to raise an inference that "City policymakers were aware of the behavior of the officers, or that the activity was so persistent and widespread that City policymakers should have known about the behavior." *Latuszkin v. City of Chi.*, 250 F.3d 502, 505

(7th Cir. 2001). Accordingly, his *Monell* claim must be dismissed. *See, id.; Johnson v. Sandidge,* 87 F.Supp.2d 832, 834 (N.D. Ill. 1999) ("[A] municipality can be held liable only if it had actual or imputed awareness of the custom and its consequences, thereby showing the municipality's approval of the alleged unconstitutional violation.") (citing *Sims v. Mulcahy,* 902 F.2d 524, 543 (7th Cir. 1990)).

This conclusion is bolstered by the fact that there is an obvious lawful explanation for the City's tows of Sroga's vehicles. *See, McCauley v. City of Chi.,* 671 F.3d 611, 616 (7th Cir. 2011) ("If the allegations give rise to an obvious alternative explanation, then the complaint may stop short of the line between possibility and plausibility of entitlement to relief.") (internal citations, alterations and quotation marks omitted). In this case, the alternative explanation to Sroga's vehicles being towed without probable cause out of pure spite is that they were towed because their VINs were not visible.

Recall that Sroga alleges that the Confidential VIN checks were performed for two reasons: (1) "to verify that the vehicle subject to the check has [] a VIN Number," and (2) to "verify that essential parts are not stolen." Am. Compl. ¶ 26. Sroga does not complain that this dual purpose of the Confidential VIN checks policy is improper. Specifically, he does not assert that

ordering a Confidential VIN check to verify that the vehicle has a VIN is unconstitutional. Yet, he says that the City's policy deprived him of his constitutional rights because it does not require "probable cause to believe the vehicles are stolen or have stolen parts." *Id.* ¶ 28. Sroga thus skips over the first reason why a Confidential VIN check may be ordered: to verify the VIN. He instead focuses exclusively on how his vehicles do not fall into the second category. This is inadequate as Sroga does not complain that towing a car to verify its VIN deprives the car owner of his rights under the Constitution.

Moreover, even assuming that a Confidential VIN check should be ordered only when a vehicle is suspected of being stolen or containing stolen parts, then according to Sroga's Complaint, checking and verifying the VIN number is the way CPD personnel ascertain whether a vehicle falls into this category. *See,* Am. Compl. ¶ 27 (alleging that "when CPD lists a vehicle for a Confidential VIN check, it is towed and CPD personnel then search the vehicle to check and verify the VIN numbers"). Thus, the obvious alternative explanation to why Sroga's vehicles were towed is apparent on the face of the Complaint itself: they were towed because their VINs were not visible and so could be verified only after a tow. That Sroga pleads such details about the verification of the VINs and yet fails to say that the VINs on his

vehicles were easily verifiable is a pregnant omission that, along with everything else already discussed, stops his Complaint short of "the line between possibility and plausibility of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 548 (2007).

Finally, to the extent that Sroga's *Monell* claim is premised on the June 18, 2014 incident, his alleged constitutional violations against the individual Defendants based on that incident have been dismissed. It is true that "a municipality can be held liable under *Monell,* even when its officers are not." *Thomas,* 604 F.3d at 305 ("[W]e find unpersuasive the County's argument that it cannot be held liable under *Monell* because none of its employees were found to have violated Smith's constitutional rights. . .. The actual rule, as we interpret it, is much narrower: a municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an *inconsistent* verdict.") (emphasis in original). However, such a finding of naked municipality liability, unaccompanied by any individual defendant's liability, is usually possible only where the individual defendants assert some sort of affirmative defense. *See, id.* (stating in its discussion of *Los Angeles v. Heller,* 475 U.S. 796, (1986) that "If, for instance, the officer had pled an affirmative defense such as good faith, then the jury might have found that the plaintiff's constitutional rights were indeed

violated, but that the officer could not be held liable. . ..
[But] [w]ithout any affirmative defenses, a verdict in favor of
the officer necessarily meant that the jury did not believe the
officer violated the plaintiff's constitutional rights.").

In this case, none of the Chicago Police Officer Defendants
relied on an affirmative defense to the constitutional claims
against them. While the Court did dismiss the Sanitation
Defendants on a finding of qualified immunity, the charge against
these Defendants – that they seized Sroga's vehicle by parking
next to his car in such a way as to prevent him from driving away
– is not linked to the municipal policy Sroga alleges. As such,
the City's policy (assuming *arguendo* that there is one) was not
the "moving force" behind Sroga's constitutional violation (to the
extent that there was such a violation). *See, Gable,* 296 F.3d at
537 ("[T]o maintain a § 1983 claim against a municipality, one
must establish . . . the requisite causation (the policy or custom
was the 'moving force' behind the constitutional deprivation).").
Sroga thus has not pleaded any constitutional violation upon which
he can seek to hold the City liable on a *Monell* theory.

Accordingly, the Court dismisses the *Monell* claim (Count XI)
against the City of Chicago.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, City of Chicago's Motion to Dismiss [ECF No. 54] is granted.

The Individual Defendants' Motion to Dismiss [ECF No. 52] is granted in part and denied in part as follows:

1.    Counts I and VIII are dismissed with prejudice;

2.    Counts II, III, IV, VI, VII, IX, and XI are dismissed without prejudice; and

3.    Count X survives the dismissal, as limited to the allegation that the Defendants should have intervened to stop the use of excessive force at the scene of the tow and arrest.

**IT IS SO ORDERED.**

_____
          Harry D. Leinenweber, Judge
          United States District Court

Dated: August 3, 2017