# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KEVIN SROGA, | Case No. 16 C 5796 |
| Plaintiff, | Judge Leinenweber |
| v. | Magistrate Judge Finnegan |
| JENNIFER HONDZINSKI, et al., | **JURY TRIAL DEMANDED** |
| Defendants. | |

## SECOND AMENDED COMPLAINT

Plaintiff Kevin Sroga ("Sroga"), for his Second Amended Complaint avers as follows:

## THE PARTIES

1. Plaintiff Sroga is and was at all times relevant to the allegations in this Complaint, a resident of Chicago, Illinois.

2. Defendant Donna Tarala, Star No. 19323 ("Tarala"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

3. Defendant Edwin Pagan, Star No. 4338 ("Pagan"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

4. Defendant Tracey Sroka, Star No. 16934 ("Sroka"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

5. Defendant Edwin Roman, Star No. 15673 ("Roman"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

6. Defendant Cesar Echeverria, Star No. 14374 ("Echeverria"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

7. Defendant Julie Butzen, Star No. 8582 ("Butzen"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

8. Defendant James Poremba, Star No. 2277 ("Poremba"), was, at all times relevant to the allegations in this Complaint, employed as a Sergeant by the City of Chicago Police Department.

9. Defendant Sonia Moriarty, Star No. 11907 ("Moriarty"), was, at all times relevant to the allegations in this Complaint, employed by the City of Chicago Police Department.

10. Defendant the City of Chicago was, at all times relevant to the allegations in this Complaint, a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the City of Chicago maintained, managed, and/or operated the City of Chicago Police Department.

11. At all times relevant to this Complaint, the Defendants, except for the City of Chicago, acted under color of law and within the scope of their respective employment with the Chicago Police Department.

12. All Defendants, except for the City of Chicago, are sued in their individual capacity.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, and 1343. Sroga asserts claims under 42 U.S.C. § 1983 to redress the deprivation of his Fourth and Fourteenth Amendment rights under the United States Constitution by state officials or employees acting under color of state law.

14. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because the events forming the basis of this Complaint occurred in this District.

**Chicago Police Tow Requests for Confidential VIN Checks**

15. The Chicago Police Department has, at all times relevant to this suit, had a policy of allowing its officers to order tows of vehicles otherwise lawfully parked for so-called Confidential Vehicle Identification Number ("VIN") Checks.

16. The ostensible purpose of these Confidential VIN Check tows is to allow the vehicle identification numbers of a vehicle to be checked to determine ownership of the vehicle or to attempt to determine whether the vehicle, or a part thereof, was stolen.

17. Chicago Police trainees are taught in the Chicago Police Academy that vehicles legally parked on City streets may be towed pursuant to a Confidential VIN Check at the order of a police officer when the vehicle's VIN is not visible on the dash and the vehicle has no license plate.

18. This practice of police tow orders for legally parked vehicles for Confidential VIN Checks is in wide use by the Chicago Police Department.

19. The only Chicago Police Department General Order addressed to vehicle Towing and Relocation Operations (General Order 607-03) addresses Confidential VIN Checks, although it contains no provisions setting out the circumstances under which a vehicle can be towed for a Confidential VIN Check. In addition, in numerous places, General Order 607-03 requires that Chicago Police Department members requesting a Confidential VIN Check attach the vehicle keys to the Vehicle Tow Report (IV.A.6) and requires that the police District Station Supervisor "will ensure that… Vehicle Tow Reports indicating 'Hold-Confidential VIN Check' or 'Hold for Investigation Wanted Vehicle' have the vehicle keys and fob attached and secured until the arrival of the tow truck driver." (IV.E.6)

20. Thus, the only Chicago Police Department General Order that addresses Confidential VIN Check tow requests anticipates that they will be issued when the police

department has the vehicle's keys, and contains nothing authorizing a tow request when a legally parked vehicle's VIN is obscured or covered and when it does not have a license plate.

21. Neither Chicago City Ordinance nor Illinois law authorizes the Chicago Police to issue tow requests when a vehicle's VIN number is covered or obscured and the vehicle lacks a license plate.

22. Chapter 9-92 of the Chicago Municipal Code governs Impounding and Relocation of Vehicles. It authorizes members of the Department of Streets and Sanitation to remove or have vehicles removed when an emergency arises necessitating the removal of a vehicle from a public way (9-92-010). It also contains a section entitled "Authority to impound or otherwise relocate vehicles" which authorizes members of the police department and employees of the Department of Streets and Sanitation to authorize removal of vehicles from a public way in certain enumerated circumstances, including, for example when a vehicle obstructs traffic, is parked in a tow zone, or has been abandoned (9-92-030). This section makes no reference to towing vehicles for Confidential VIN Checks or because they lack license plates or have some object covering the vehicle identification number on the dash.

23. Nor does the Illinois Vehicle Code authorize Chicago Police Department members to issue tow requests for vehicles that lack license plates and whose vehicle identification numbers are not visible. Instead, its Article II ("Abandoned, Lost, Stolen or Unclaimed Vehicles") contains a subsection (4-203) titled "Removal of motor vehicles or other vehicles; towing or hauling away" which makes no mention of Confidential VIN Checks.

24. Section 2-14-132 is the general provision of Chicago Municipal Code that allows a police officer or authorized city agent to impound a vehicle involved in a "status-related offense" and a "use-related offense." Both of these types of offenses require that the officer or

4

authorized City agent have probable cause to believe that an enumerated ordinance violation has occurred before the vehicle can be seized and impounded.

25. In short, there is no legal authority for Chicago Police officers to order vehicles to be towed for Confidential VIN Checks.

26. Police Officers in the 14th district, including Defendants Moriarty, Tarala, and Sroka have ordered the towing of Sroga's vehicles approximately 30 or more times. None of those tows were found to be justified.

27. Of these approximately 30 previous tows ordered by Police Officers in the 14th District, approximately eight were Confidential VIN Checks.

## June 18, 2014 Incidents

28. On June 18, 2014, Sroga's vehicle, a 1997 Ford Crown Victoria ("Sroga's vehicle") was lawfully parked on the street in the vicinity of 1240 N. Homan Avenue, Chicago, IL 60651.

29. Sroga's vehicle had, on that date, a Seven Day Permit affixed to the inside of the rear window. Seven Day Permits are temporary registration permits as provided by Section 3-403 of the Illinois Vehicle Title & Registration Law of the Illinois Vehicle Code. Seven Day Permits are issued by the Illinois Secretary of State's Office upon proof of ownership of the vehicle. 92 Ill. Adm. Code § 1010.426. Mr. Sroga had obtained the permit because the vehicle's registration renewal was on hold because of failure to comply with emissions testing. By law, vehicles using Seven Day Permits may not bear license plates. 92 Ill. Adm. Code § 1010.426(e). When properly displayed, the permit is an official document recognized by law enforcement agencies. *Id*.

30. Sometime in the morning of June 18, 2014, Defendant Sroka made a tow request for Sroga's vehicle for a Confidential VIN Check after observing Sroga's vehicle parked on a city street without license plates and allegedly with its dashboard VIN covered.

31. At approximately 12:00 pm, Sroga arrived at his vehicle.

32. When Sroga arrived at his vehicle, a flat bed tow truck bearing a placard reading "CITY OF CHICAGO DEPARTMENT OF STREETS AND SANITATION, POLICE TOWING," had pulled up in front of Sroga's vehicle.

33. On information and belief, the tow truck was operated by subcontractors of E&R or United Road Towing, which operate auto pounds for the City and sub-contract out to tow truck operators to tow vehicles.

34. The tow truck had come to tow Mr. Sroga's vehicle in response to a Confidential VIN Check request that had been made by Defendant Sroka earlier on June 18, 2014.

35. Upon arriving, Sroga spoke with the tow operator, identifying himself as the owner of the vehicle. At that time, the tow operator indicated that that he had a Tow Report to tow Plaintiff's vehicle.

36. Sroga requested the tow operator to contact his dispatch to inform them that the owner of the vehicle was on scene, and request they either cancel or override the tow.

37. Thereafter, Sroga sat in his car.

38. Sroga's vehicle was legally parked.

39. Sroga had every legal right to sit in his car.

40. Shortly thereafter, while Sroga was sitting in the driver's seat of his vehicle with the key in the ignition, employees of the Chicago Streets and Sanitation Department, Raymond Souchet and Leroy Kaminski, appeared on the scene in separate vehicles.

6

41. Under the Chicago Municipal Code, "no person shall operate a vehicle to tow another vehicle if the towed vehicle contains one or more passengers." Chicago Mun. Code § 9-44-060.

42. On arriving at the scene, Souchet and Kaminski parked the Chicago Department of Streets and Sanitation vehicles they were driving alongside and slightly to the rear of Sroga's vehicle. The placement of these vehicles made it impossible for Sroga to drive his vehicle out of his parked space. Souchet and Kaminski parked on the street side of Sroga's vehicle in a way that prevented Sroga from opening his driver-side door, or leave in his vehicle.

43. Sroga requested Souchet and Kaminski to cancel the tow and move their vehicles so that he could relocate his vehicle. Souchet and Kaminski did not comply with these requests.

44. Instead, Souchet and Kaminski instructed the tow operator to wrap his tow cable around Sroga's front bumper of his vehicle while Plaintiff was sitting inside of his vehicle with the key in the ignition. The tow operator proceeded to wrap his cable around the front of Sroga's vehicle.

45. During the entire time that Sroga was at the site of his vehicle on June 18, 2014, Sroga's vehicle was never in the possession of the Chicago Department of Streets and Sanitation or the City of Chicago.

46. Defendants Moriarty and Tarala were the first Chicago Police Officers to arrive at the scene, arriving approximately ten minutes after Souchet and Kaminski had arrived.

47. When the first police officers arrived, Souchet and Kaminski moved their Department of Streets and Sanitation vehicles. The squad cars of the Chicago Police Department then parked in the approximate location that the Chicago Department of Streets and Sanitation vehicles had been parked.

48. Upon arriving at the scene, Defendant Tarala walked to Sroga's door and immediately attempted to open it. Defendant Tarala was unable to open the door because it was locked.

49. Defendants Tarala and Moriarty then unlawfully ordered Sroga to get out of his vehicle. Sroga declined and requested that Defendant Tarala call a Sergeant to come to the scene.

50. While the parties awaited a Sergeant, additional police officers arrived at the scene. Defendant Pagan arrived at the scene and also tried to persuade Sroga to exit his vehicle. When the Sergeant, Defendant Poremba, arrived, he did not speak with Sroga about the circumstances, but rather unlawfully ordered him to get out of his vehicle. Sroga continued to stay in his vehicle.

51. Thereafter, Defendant Poremba told Defendant Pagan to forcibly enter Sroga's vehicle by breaking a rear passenger-side window of Sroga's vehicle.

52. After breaking the rear passenger-side window, Pagan unlocked and opened the front passenger door and sat in the front passenger seat.

53. During this unlawful, forcible entrance, Defendant Pagan trained his tazer at Sroga and threatened that if Sroga moved, Defendant Pagan would taze him. Sroga remained in his seated position during the forcible entry.

54. Defendant Pagan then reached over and opened the driver's side door.

55. Once Sroga's driver side door was open, Defendant Roman pulled Sroga out of the vehicle.

56. Once Sroga had been forced out of his vehicle, multiple officers descended upon Sroga to handcuff him. While Sroga was being placed in handcuffs, he was being searched and

8

pulled by the multiple officers that descended upon him. Another officer, Defendant Echeverria, placed Sroga in a choke hold in the course of taking Sroga down to the ground. While the CPD officers were manhandling Sroga, one placed a boot forcibly on Sroga's head pushing his face into the pavement. Defendant Butzen and Roman assisted Defendant Echeverria in taking Sroga to the ground. Throughout this incident, Sroga did not resist the officers. The CPD officers placed handcuffs on Sroga excessively tight. As a direct result of the unnecessary and excessive force used to take Sroga to the ground, Sroga suffered torn tendons in both his right and left elbows.

57. Defendant Pagan put Sroga into Officer Hondzinski's squad car. Officer Hondzinski transported Sroga to the 14th District Police District. Upon arrival to the 14th District, Defendant Pagan escorted Sroga to a cinderblock holding room, restrained in handcuffs, where he was held for processing.

58. While in the cinderblock holding room, Defendant Pagan slammed Sroga chest first into one of the walls and said "Welcome to our house now bitch!"

59. As a result of such excessive, unwarranted use of force while he was in police custody within the 14th District, Sroga suffered injuries to his chest and arms. Due to Pagan's abuse and outrageous conduct, Sroga requested that Evidence Technicians ("ET") police officers take pictures of his bruised chest and wrists. An ET took pictures of Sroga as requested. The memory card that the pictures were saved to was damaged and the photos are not available now, nor were they available when an Independent Police Review Authority ("IPRA") investigation occurred at Sroga's request. The injuries to Sroga's arms continue to prevent him from gaining full employment.

60. Sroga sustained and still continues to suffer from trauma, humiliation, fear, undue stress, mental anguish, lost wages, and the loss of employment as a result of his arrest and injuries.

61. Sroga was arrested and detained for approximately four to six hours at the 14th District.

62. After being detained at the 14th District, Sroga was transferred to the 19th District Police Station. After approximately two hours being detained in the 19th District Police Station, he was released, without ever having been told any explanation for his arrest.

63. As he was leaving, Sroga was given a Personal Recognizance Bond ("I-bond"). From the I-bond, Sroga learned that he had been charged with violating 720 ILCS 5/21-2 Criminal Trespassing to Vehicles and 720 ILCS 5/31-1-A- Resisting/PC Off/Correction EMP/Fire Employees or Police Officer. (the "Charges").

64. The Charges against Sroga from the June 18, 2014 incident were pending for 15 months within the Circuit Court of Cook County. The Charges were never tried, and on November 16, 2015, the Judge dismissed the Charges because the State was not ready when the case was called.

## FIRST CLAIM FOR RELIEF

**Violation of the Fourth and Fourteenth Amendments for Illegal Seizure of Sroga's Property**
**(Moriarty, Tarala, Pagan, Sroka, Poremba, and Roman)**

65. Sroga repeats and realleges the allegations in paragraphs 1 through 64 above as set forth fully herein.

66. Pursuant to the Fourth Amendment and 42 U.S.C. § 1983, Sroga has a right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

67. The Fourteenth Amendment makes the Fourth Amendment applicable to the state of Illinois and its officials.

68. Sroga did not act in violation of any City of Chicago, Illinois, or federal law or ordinance by occupying his vehicle or in refusing to acquiesce to the requests to exit his vehicle on June 18, 2014.

69. The Confidential VIN Check tow order that led to the truck appearing to tow Sroga's vehicle on June 18, 2014, was issued without legal authority. There is no legal authority under Chicago ordinance or Illinois statute to allow Chicago police officers to order vehicles to be towed for Confidential VIN Checks.

70. While the purported rationale for the Chicago Police tow request of Sroga's vehicle was that there was some possibility that the vehicle was stolen or the VIN was unidentifiable, none of the officers appearing at the scene of the tow took any steps to investigate whether there might be cause to believe the vehicle was either stolen or unidentifiable.

71. For example, the tow request was based in part on the premise that there was something on the vehicle's dash covering its vehicle identification number. No officer asked Mr. Sroga to move whatever was covering the VIN so it could be checked. Nor, on information and belief, did any officer seek to check the VIN's on the dash or door panel after Mr. Sroga had been unlawfully forced out of his vehicle. Nor did any officer, on information and belief, take into account the seven day permit affixed to the rear window of Sroga's vehicle, which contained information that would allow them to verify Sroga's ownership.

72. The Municipal Code of the City of Chicago allows vehicles in the custody of a private tow operator hired by the City to be released to the owner if the owner furnishes evidence

11

of his identity and right of possession to the vehicle and sign a receipt to tow the vehicle. Municipal Code § 9-92-090.

73. Nonetheless, none of the officers at the scene asked for proof of ownership from Sroga.

74. Defendant Sroka had no probable cause to believe that Sroga's vehicle was stolen when she made the request for the Confidential VIN Check tow. Defendant Sroka violated Sroga's constitutional rights against unreasonable seizures when she ordered a tow of Sroga's vehicle without any legal basis or probable cause.

75. Because, *inter alia*, there is no legal basis for tow orders for Confidential VIN Checks, Defendants Moriarty, Tarala, Pagan, and Poremba had neither probable cause nor reasonable suspicion to believe that Sroga had committed or had attempted to commit a crime nor was illegally seated in his vehicle at the time they arrived at the scene and unlawfully ordered Sroga to exit his vehicle.

76. At no point—from their arrival on the scene to taking Sroga to jail—was there a reasonable basis or probable cause on which Defendants Moriarty, Tarala, Pagan, Sroka, and Poremba could have believed that Sroga had committed any crime, especially in light of the fact that the vehicle was not in the lawful possession of the City of Chicago.

77. Even after the tow truck had attached Sroga's vehicle to his truck, Sroga's vehicle was not in the legal custody of the City. There was no legal tow order. Confidential VIN Check tows are not authorized by State law or City ordinance.

78. Defendants Moriarty, Tarala, Pagan, Roman, and Poremba violated Sroga's constitutional rights against unreasonable seizures when they acted to force Sroga out of his vehicle in order to allow the vehicle to be towed under an illegal tow order that Sroka had earlier

12

issued. Moriarty and Tarala ordered Sroga out of his car (which Sroga had every legal right to sit in) and ordered back up when Sroga failed to follow this improper order. Defendant Poremba ordered Sroga also unlawfully ordered Sroga out of his car. Further, Defendant Poremba ordered Pagan to break into Sroga's vehicle to force Sroga out of his vehicle. Pagan broke into Sroga's vehicle and along with Roman forced Sroga out of his vehicle. Each of these defendants acted to remove Sroga from his legally parked vehicle which he had a right to sit in, all in an attempt to allow that the vehicle be towed pursuant to the illegal tow order, which tow could not be effected while Sroga remained in his vehicle.

79. Defendants Moriarty, Tarala, Pagan, Poremba, Roman and Sroka acted under the color of state law when they committed the acts alleged in the Amended Complaint.

80. Defendants Moriarty, Tarala, Pagan, Poremba, Roman and Sroka proximately caused the deprivation of Sroga's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

81. Defendants Moriarty, Tarala, Pagan, Poremba, Roman and Sroka's deprivation of Sroga's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors caused Sroga to suffer substantial harm including, but not limited to, property damage, physical pain and suffering and both mental and emotional distress.

**SECOND CLAIM FOR RELIEF**

**Violation of the Fourth and Fourteenth Amendment of the United States Constitution for Excessive Force (Echeverria, Butzen, Pagan and Roman)**

82. Sroga repeats and realleges the allegations in paragraphs 1 through 64 above as set forth fully herein.

83. Pursuant to the Fourth Amendment and 42 U.S.C. § 1983, Sroga has a right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

84. The Fourteenth Amendment makes the Fourth Amendment applicable to the state of Illinois and its officials.

85. Sroga did not act in violation of any city, state, or federal law or ordnance by occupying his vehicle.

86. At all times, Sroga did not act violently, belligerently, or in any way threaten any of the Defendants.

87. Defendant Pagan acted unreasonably under the circumstances when he pushed Sroga out of the vehicle, under threat of tazer.

88. Defendants Echeverria, Butzen, Roman and Pagan then used excessive force to take Sroga to the ground. Sroga did not resist. Nonetheless, these defendants used excessive force and took Sroga down to the ground. Defendant Echeverria, standing behind Sroga, applied a choke-hold around Sroga's neck. The choke-hold was unnecessary and excessive use of force. Defendants Butzen and Roman joined Defendant Echeverria in bringing Sroga to the ground. The chokehold takedown was unnecessary and excessive force.

89. These defendants forced Sroga to the ground, and one of them stepped on his head to subdue Sroga, and continued to subdue Sroga when he was on the ground was clearly excessive and unreasonable given the circumstances.

90. Separately, while Sroga was in police custody in a holding room at the 14th District, Defendant Pagan slammed Sroga chest first into a cinderblock wall and said "Welcome to our house now bitch!"

14

91. Pagan's act was excessive and unreasonable under the circumstances because it occurred while Sroga was cooperating with police officers, restrained in handcuffs, and in custody at the 14th district police station.

92. By using excessive force against Sroga, Defendants Pagan, Echeverria, Butzen and Roman proximately caused the deprivation of Sroga's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

93. Defendants Pagan, Echeverria, Butzen and Roman's deprivation of Sroga's Fourth Amendment right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors caused Sroga to suffer substantial harm including, but not limited to, physical pain and suffering, and both mental and emotional distress.

### THIRD CLAIM FOR RELIEF

**Monell Liability (City of Chicago)**

94. Sroga repeats and realleges the allegations in paragraphs 1 through 64 above as set forth fully herein.

95. There is a municipal policy of allowing tows of vehicles for Confidential VIN Checks without probable cause.

96. Official training of Chicago police officers at the Chicago Police Academy includes instruction that police officers can order tows of vehicles otherwise lawfully parked on City streets pursuant to a Confidential VIN Check if the VIN number on the vehicle cannot be read (for example, if there is an envelope or a box of tissues on the dash covering the VIN number there) and the vehicle has no license plates.

97. After the Chicago Police Academy, patrol officers and supervisors, acting on and consistent with official police department training, order tows for Confidential VIN Checks without any regard to whether there is probable cause to believe the vehicle in question was in fact stolen, based merely on whether the requesting officer can read the vehicle identification numbers on the vehicle's dash and whether the vehicle has a license plate. There is no legal requirement that vehicle owners ensure that nothing is placed on the dash obscuring a vehicle identification number.

98. There is no law authorizing towing of otherwise legally parked vehicles because they lack a license plate.

99. The law authorizes vehicles to be driven without license plates, for example, if the vehicle has a seven day permit under 92 Ill. Adm. Code § 1010.426(e).

100. There is no legal support or authority for the City's policy of allowing officers to issue tow orders for vehicles legally parked on City streets on the purported grounds that a Confidential VIN Check is appropriate because the vehicle's dashboard VIN is covered and the vehicle lacks license plates. The policy is illegal.

101. The official curriculum at the City's sole Police Academy, including the teaching regarding Confidential VIN Check tow orders, reflects and embodies the polices of the City.

102. The tow order issued for Sroga's vehicle on June 18, 2014, was premised on an order for Confidential VIN Check.

103. On approximately eight previous incidents CPD caused Sroga's vehicles to be towed based on an order for a Confidential VIN Check without probable cause.

104. The Confidential VIN Checks of Sroga's vehicles occurred because Chicago Police Department policy allows issuance of Confidential VIN Check orders without probable cause and without legal basis to remove vehicles from the public way.

105. The practice of using illegal Confidential VIN Checks to tow legally parked vehicles is widespread throughout the City.

106. This has led to the improper removal of vehicles from public streets without probable cause or legal basis under the guise of Confidential VIN Checks.

107. The policy is unreasonable as it has no basis in law and it allows seizure of vehicles that are lawfully parked.

108. Towing a vehicle without probable cause or authorization violates that vehicle owner's Fourth Amendment right to be free from illegal seizure. The Chicago Police Department's policy to allow Confidential VIN Check orders to be issued without probable cause or legal basis is directly responsible for the violation of the Fourth Amendment rights of vehicle owners who have had a vehicle towed pursuant to a Confidential VIN Check.

109. Specifically, as to Sroga, the City's policy has led to the baseless removal and pickup of Sroga's lawfully parked vehicles on city streets causing Sroga to suffer damages including serious emotional and mental injuries.

110. By training police officers in the Chicago Police Academy an unconstitutional practice not supported by any city or state ordinance, and by issuing a general order and forms that anticipate that Confidential VIN Checks tows will be done, but which lack any standards for when those tows are appropriate, it is clearly foreseeable to a reasonable policy maker that police officer graduates of the Chicago Police Academy would use the unlawful practice as they were trained in the Chicago Police Academy. The Chicago Police Academy has trained its trainees

17

and future Police Officers in the unlawful use of Confidential VIN Checks for at least 20 years. The consistent official training that occurs at the sole Chicago Police Academy is not the type of act that is hidden or so remote that a reasonable policy maker would not know of it.

111. The City of Chicago was deliberately indifferent because it failed to provide adequate training in light of the foreseeable constitutional violations that would occur by allowing the Chicago Police Academy to teach all police trainees that it is Department Policy to tow vehicles pursuant to a Confidential VIN Check order when there is no legal basis to do so. The City's polices have led to the deprivation of the Fourth Amendment rights of Sroga and others to be secure in their person, house, papers, and effects, against unreasonable searches and seizures by government agents and/or actors.

## REQUEST FOR RELIEF

WHEREFORE, Sroga requests that this Court enter judgment in his favor and against the Defendants and award the following relief:

    a. Compensatory damages to compensate Sroga for his pain and suffering in an amount to be determined at trial, jointly and severally against all Defendants;

    b. Punitive damages in an amount to be determined at trial, jointly and severally against all Defendants;

    c. An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

    d. And any other relief in Sroga's favor that this Court deems proper.

## DEMAND FOR JURY TRIAL

Sroga hereby demands trial by jury on all issues so triable.

Dated: September 14, 2017 Respectfully submitted,

s/ *James A. White*
James A. White
Juan C. Arguello
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
jawhite@jonesday.com
jarguello@jonesday.com

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing Second Amended Complaint has been filed electronically on September 14, 2017. Notice of this filing will be sent to all active parties by operation of the Court's electronic filing system, which will send notification of such filing by email to all counsel of record in the above-captioned proceeding.

                                      /s/ *James A. White*